Gregg F. Brady, Petitioner *v.* Commonwealth of Pennsylvania, State Board of Chiropractic Examiners, Respondent.

Argued November 17, 1983, before Judges CRAIG, DOYLE and BARBIERI, sitting as a panel of three.

*John D. Killian, Killian & Gephart,* for petitioner.

*James J. Kutz,* Deputy Attorney General, with him *Mary S. Wyatte* and *Allen C. Warshaw,* Deputy Attorneys General, and *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE CRAIG, January 18, 1984:

This case is a proceeding in the nature of an action in equity addressed to our original jurisdiction by ADIO Institute of Straight Chiropractic, Inc. and students of that school, including some who took examinations administered in November, 1982 by the respondent, the State Board of Chiropractic Examiners.

The suit has asked the court to decide whether the ADIO graduates who passed the board's examinations, while ADIO held an interim approval granted by the board, are entitled to be licensed as chiropractic doctors, with particular reference to the fact that the board had earlier granted licenses to fifty-two of their fellow ADIO graduates.

This case is a companion case to *Coder v. State Board of Chiropractic Examiners,* No. 1902 C.D. 1982, in which this court has refused to hold invalid the fifty-two licenses which the board had voluntarily granted to earlier ADIO graduates by a board order of July, 1982. Although each of the two cases has had its separate evidentiary hearing, the evidence, stipulations and exhibits in the two cases overlap.

In this *Brady* case, the court issued an adjudication and decree nisi. Both sides have filed exceptions. Except for Petitioners' Exception 7, neither party has taken exception to the findings of fact in the *Brady* adjudication, which contains nineteen findings of fact, of which the first fifteen are substantially the same as fifteen of the findings of fact adopted in the *Coder* case and affirmed in the *Coder* case panel decision disposing of exceptions, to which cross-reference is made.[1] Although certain of the exceptions from both sides refer to failure to "find" (*e.g.*, Petitioners' Exceptions 3 and 4, Board Exception 13), they relate to legal conclusions and not to matters of fact—the only possible departure being the above-noted Petitioners' Exception 7, which is discussed below.

---

[1] *Coder v. State Board of Chiropractic Examiners*, No. 1902 C.D. 1982 (filed January 18, 1984).

A parallel tabulation of the numbers of the findings of fact in this *Brady* case and the same findings in *Coder* is as follows:

| Brady | | Coder | Brady | | Coder |
|---|---|---|---|---|---|
| 1 | — | 1 | 9 | — | 10 |
| 2 | — | 2 | 10 | — | 11 |
| 3 | — | 3 | 11 | — | 12 |
| 4 | — | 5 | 12 | — | 13 |
| 5 | — | 6 | 13 | — | 14 |
| 6 | — | 7 | 14 | — | 16 |
| 8 | — | 7 | 15 | — | 17 |

The parties have taken no exception to the remaining Brady findings, respectively to the effect that—

(No. 16) The November, 1982 examinations were the next examinations given by the board after May, 1982;

(No. 17) All of the petitioners, except two, passed the November, 1982 examinations;

(No. 18) The board has not licensed any of those November, 1982 examinees; and

(No. 19) The petitioners completed the same course of study at ADIO as the fifty-two graduates who have been licensed.

## FACTS

The history of the case includes ADIO's process of seeking board approval as a school of chiropractic, beginning in 1978, when ADIO's first class of students began. The board accorded "provisional approval" to ADIO during periods between 1979 and January, 1980 and between February, 1980 and the grant of interim approval, noted below. During the period of provisional approval, the board did not authorize the licensing of any ADIO graduates and did not permit ADIO students or graduates to sit for board examinations until this court ordered that the taking of examinations (but not licensure) be allowed, in order that the students could be tested before their education and training became stale by the passage of time.[2]

The particular chronology crucial to this *Brady* case is as follows:

May, 1982—ADIO graduates and last semester students, as allowed by law, took board examinations, and fifty-two of them passed.

June, 1982—The board granted interim approval for one year and voted to issue licenses to all ADIO students passing the examination during that period.

July, 1982—Without rescinding the interim approval, the board ordered the issuance of licenses only to students who had by that date passed the board's examinations.

September, 1982—The board permitted ADIO graduates and last semester students to sit for examinations during the period of interim approval, until June 30, 1983, but negated any further licensing.

---

[2] *Smith v. State Board of Chiropractic Examiners*, No. 485 C.D. 1981 (filed March 27, 1981).

November, 1982—ADIO graduates and students took board examinations and all but two passed.

May, 1983—Additional ADIO graduates and students took and passed the board examinations.

June, 1983—The interim approval expired by its terms.

Excepting the fifty-two licenses which the board has issued, the board has not granted licenses to any ADIO graduates or students who passed the November, 1982 and May, 1983 examinations.

## ISSUES AND DISCUSSION

The petitioners earlier contended that the board's actions in July and September of 1982 could and should be interpreted to bar from licensure only students graduated from ADIO after the expiration of the one-year interim approval, thus to be read as a board authorization for the licensure of all those who passed the examinations during the one-year period. On the basis of the wording of the board actions, and the board's unequivocal administrative interpretation of its actions since their adoption, the court rejected that contention, and the petitioners have not preserved that issue at this exceptions stage.

Therefore, the only remaining issues are two questions of law:

1. Did the board's refusal to license those petitioners who passed the November, 1982 examinations violate the due process rights of those petitioners?

2. Are the petitioners who passed the November, 1982 examinations entitled to licensure under equal protection of laws, in that they are not in a class meaningfully different from the

fifty-two ADIO graduates whom the board has licensed?

## 1. *Due Process Rights*

Petitioners first contend that, by virtue of the board action of June 17, 1982—granting licensure to all ADIO graduates passing the examination during the interim approval period — petitioners acquired property rights in their profession which could not be divested by the subsequent orders of the board on July 8 and September 9, 1982.

Of course, the right to practice a profession, once acquired, does constitute a property right in the licensee. *In Re Shigon,* 462 Pa. 1, 329 A.2d 235 (1974); *Schlesinger Appeal,* 404 Pa. 584, 596, 172 A.2d 835, 840 (1961). However, no property right exists when the right to practice the occupation or profession has not accrued and therefore has not yet been acquired. The inchoate prospect of licensure which the board dangled before ADIO students, in its action of June 17, never crystallized before the adoption of the board July and September order which took that prospect away; petitioners did not acquire the indispensable successful examinee qualification until later, in November.

Therefore, there is no basis for holding that these petitioners acquired a property right in their professional status before July, 1982.

## 2. *Entitlement to Licensure on the Basis of Equal Protection*

Petitioners' other argument is based on the view that petitioners do not constitute a class any different from that group of fifty-two students to whom the board granted licenses pursuant to the July 8 order. The fortunate fifty-two ADIO graduates received education at ADIO in a period during most of which ADIO was under the board's provisional approval,

and the board actually issued those licenses after the provisional approval was replaced in June of 1982 by interim approval. In the companion *Coder* case, this court holds that the board acted in accordance with its statutory power in issuing those licenses. The Chiropractic Registration Act of 1951, Act of August 10, 1951, P.L. 1182, §§1-24, *as amended,* 63 P.S. §§601-624, repetitively makes it clear that the board's function is to grant licenses to those educated in an "approved" school; the conclusion in *Coder* is that the board has the power to award "interim approval," constituting "approval" sufficient under the statute for licensure, albeit limited as to duration.

The problem here, one of first impression, arises because the board has excluded from the benefits of that concept this further group of students who, like the fifty-two students licensed, received their education from ADIO during the period of provisional approval, and who subsequently took and successfully passed the board's own examinations during the period of interim approval which followed.

Thus, petitioners here, upon analysis, are not in a class meaningfully distinguishable from the fifty-two licensees on any basis consistent with the purpose of the licensing law.

The board now seeks to avoid that analysis by first offering the concession that the board's own action, granting licenses to the fifty-two earlier graduates, was "factually suspect" or "erroneous"—a position wholly inconsistent with that which the board maintained in defending as respondent in the *Coder* case. Board counsel, having thus relegated the ADIO licensees to the realm of suspect error, argues that the petitioners should be compared as a class with all other chiropractic school graduates then and now seeking licensure. Thus the board proceeds with the contention that petitioners are being treated precisely

the same as that class, being required to have an education in a chiropractic school approved without limitation.

We nevertheless can only conclude that, because the board regarded the interim approval status as sufficient for licensing one ADIO group, the board cannot validly administer its function so as to discriminate against an indistinguishably similar group of graduates. *See Rabino v. State Registration Board for Professional Engineers,* 69 Pa. Commonwealth Ct. 191, 450 A.2d 773 (1982), *Bonham v. State Board of Examiners of Nursing Home Administrators,* 31 Pa. Commonwealth Ct. 50, 375 A.2d 821 (1977). Both groups had the same education from the same school. Because the interim approval status in July was sufficient to license the May examinees, the existence of the same approval status in November is sufficient for the licensure of the November examinees.

At most, the conclusion we reach would require the board only to license successful examinees from ADIO or some other school possessing approval for at least an interim; in relation to that effect, there is nothing in the statute or case law which requires the board to perpetuate an approval awarded for an interim period. Indeed, at this writing, the interim approval of ADIO is no longer in effect, having expired by its terms June 30, 1982.

Understandably, the board is unable, when a new school is founded, to grant total permanent approval at the outset. Acting reasonably, the board obviously has desired to permit a new school such as ADIO to get started, with its early classes of students, while the entire approval process is being completed. However, instead of granting ''provisional'' approval, which (as defined by the board) has functioned to permit the school to receive tuition but has barred the students from realizing any ultimate benefit from their

education, the board can administer other rational applications of the statutory concept. As just one example, the board could grant approval, sufficient as a basis for licensure from the outset, but upon a probationary basis subject to prospective revocation if the applicant school should not ultimately measure up, thus avoiding the possibility that time and tuition invested by a student could retroactively be snatched away because of the failure of the probationer school subsequently to achieve a status deserving permanent approval. By some approach such as that, students would be guaranteed that any time and money spent in a school with an approved status under probation could not be lost, even though that approval could properly be revoked before their completion of the school's curriculum, thus requiring them to complete their education elsewhere, although not to redo it entirely.

As noted above, to treat these petitioners in the same manner as their earlier ADIO graduate peers simply accords equal treatment to the students presently involved—students who have been encouraged, albeit not guaranteed, by the board's approval terms to believe that their chiropractic education was being well spent. Although this record does not contain evidence sufficient upon which to adjudicate where the fault, if any, might lie for the length of the six-year process which has taken place concerning ADIO, the present problems would not be upon these students if ADIO had achieved permanent approval earlier, or if the board had earlier completed its ultimate evaluation of ADIO one way or the other.

DISPOSITION OF EXCEPTIONS

*Petitioner's Exceptions*

As noted above, the only exception which appears actually to relate to a matter of fact is Petitioners'

Exception 7, directed to failure to find that the finding and conclusions of Professor Hirsh in his hearing examiner's report "were never approved per se" by the board. Although the board has never expressly approved or disapproved those findings and conclusions, the board has acted (as noted in the court's findings) on the basis of at least some of them. The petitioners have not explained what "per se" approval means. Hence, no such finding is possible, and Petitioners' Exception 7 is therefore dismissed.

Petitioners' Exception 3 is directed to failure to find that the board's July 8 order "memorialized" interim approval; the exception is dismissed because that board order does not expressly mention interim approval and therefore does not "memorialize" it in the sense of that verb, which we understand as referring to an express recording.

Petitioners' Exceptions 4, 5 and 6 articulate petitioners' property right and due process theories; thus they relate to Conclusion of Law No. 2, which rejected those theories. They are therefore dismissed for the reasons stated above in the discussion of that first issue.

Petitioners' Exception 2, directed to failure of this court to mandate the licensing of all eventual ADIO graduates who were matriculated at ADIO before the expiration of the interim approval (hence including those who would pass board examinations *after* that expiration date), is dismissed because the words of the chiropractic licensing statute make clear that, so long as ADIO has no approval status, its exam-passing graduates are not eligible for licensure.

Petitioners' Exception 1, directed to the absence of any order by this court mandating the licensing of ADIO graduates and students passing the May, 1983 examination must, as a matter of logic, be sustained.

We have concluded that the successful November, 1982 examinees are entitled to licensure because of ADIO's interim approval status. The same concept is equally applicable to the successful May, 1983 examinees, and counsel for both sides have agreed at oral argument that those two groups, at least, are in the same class. The final order will be modified accordingly.

### Board Exceptions

Certain exceptions of the board cannot be sustained because they do not constitute exceptions as understood by the law and practitioners. Board Exception 3 objects to the court's characterization of the board's position as contending that the licensing of the fifty-two ADIO graduates was illegal, but, as noted above, the board's present brief expressly argues that such action was "factually suspect" or "erroneous;" an erroneous board action would not be a lawful one. Board Exception 9 complains that the court erred in making case citations in discussion. Board Exception 11 is not directed to any finding or conclusion, or to the order, but is just an argument. Hence, Board Exceptions 3, 9 and 11 are dismissed.

Board Exceptions 13 and 14, although speaking in terms of the absence of findings, actually constitute references to matters of law. Board Exception 13 contends that the court should conclude that merely passing an examination is not, alone and of itself, sufficient to determine competency to practice chiropractic. No such issue is present in the case; all parties agree that, at the least, there must in addition be education in a school given an approval by the board. Similarly, Board Exception 14 complains that the court has not concluded that the requirement of graduating from an approved school is rationally related to a legitimate public objective. However, that requirement has

always been an accepted premise in the case, and its validity has not been contested. Hence, Board Exceptions 13 and 14 are dismissed.

Two of the board exceptions relate to the exclusion of evidence. Board Exception 21 is taken to the exclusion of testimony on the contents of the hearing examiner's report "as it related to providing the board with a rational basis" for its action in July, 1982. Of course, the report speaks for itself, and Board Exception 21 is therefore dismissed. Similarly, Board Exception 22 is directed to refusal to hear the testimony of Commissioner Miller, an ex efficio board member, "regarding the rationale for his votes." As we stated in *Coder*, it is not the role of this court to explore the mental processes of administrative officials. *See United States v. Morgan*, 313 U.S. 409 (1941), *Commonwealth v. Pennsylvania Public Utility Commission*, 17 Pa. Commonwealth Ct. 351, 331 A.2d 598 (1975). The principle is applicable with particular force when an administrator seeks to volunteer a revelation of his mental processes. Board Exception 22 is dismissed.

(Conclusion of Law No. 1, which expressed this court's interpretation of the board's order as barring the licensure of candidates other than the fifty-two licensed ones, is no longer being contested. Disposition of the petitioners' exception to Conclusion of Law No. 2 has been made above.)

All but one of the remaining board exceptions are directed to Conclusion of Law No. 3, holding that denial of licensure to any successful examinees during the interim approval period would be a deprivation of equal protection of laws as to them. In view of our final determinations of that issue, stated in the discussion above, we dismiss those exceptions, namely Board Exceptions 1, 4, 5, 6, 7, 8, 10, 12, 15, 16, 17, 18, 19 and 20.

The final board exception, Board Exception 2, is directed to Conclusion of Law No. 4, pertaining to relief, and therefore to the order also. In view of our conclusions above, that Board Exception 2 is dismissed.

In summary, all exceptions of both parties are dismissed except Petitioners' Exception 1, which is sustained. The final order is modified accordingly.

### ORDER

Now, January 18, 1984, all exceptions of both parties are dismissed except Petitioners' Exception 1, which is sustained, and it is ORDERED that respondent State Board of Chiropractic Examiners shall grant licenses to practice chiropractic and to use the title "Doctor of Chiropractic" to all graduates of the ADIO Institute of Straight Chiropractic, Inc. who successfully passed the examinations administered by the respondent board in November, 1982 and in May, 1983.