**Daniel Anthony NICOLETTI and Dan Nicoletti Auto Sales, Petitioner,**

v.

**STATE BOARD OF VEHICLE MANUFACTURERS, DEALERS AND SALESPERSONS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 1997.

Decided Jan. 29, 1998.

---

Andrew M. Schifino, Pittsburgh, for petitioner.

Beth Sender Michlovitz, Harrisburg, for respondent.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Daniel A. Nicoletti and Dan Nicoletti Auto Sales (Dealership) petition for review of the March 20, 1997 Adjudication and Order of the State Board of Vehicle Manufacturers, Dealers and Salespersons (Board), revoking Nicoletti's license as a Salesperson and his Dealer's license pursuant to Section 19(4) of the Board of Vehicles Act (Act) [1]. We affirm.

Nicoletti first obtained his license to sell automobiles in 1979 and, subsequently, held a license to operate a dealership until the Board suspended his dealer's license on July 20, 1990, after which he closed his dealership and filed for bankruptcy protection. Nicoletti had been the subject of a federal investigation and on September 30, 1992, he was indicted for one count of conspiracy and five counts of mail fraud. It was alleged in the indictment that from June 30, 1986, through February 1, 1991, Nicoletti, and others, conspired to defraud insurance companies through a scheme whereby persons would deliver an automobile to Nicoletti and subsequently report the car as stolen to their insurance carrier. It was also alleged that Nicoletti would direct persons in his employ to remove the vehicle identification number (VIN) from the "stolen" automobiles, and replace it with the VIN of vehicles under his control. The indictment additionally alleged that the United States Postal System was used in furtherance of this conspiracy. On February 11, 1993, Nicoletti pled guilty to one count of conspiracy to defraud [2] and two counts of mail fraud,[3] in the Federal District Court for the Western District of Pennsylvania, and on August 24, 1993, he received a sentence of twenty-seven months imprisonment, supervised release for a period of three years after his discharge from prison, and a special assessment of $150.00.

On May 20, 1994, on the basis of his federal conviction, the Bureau of Professional and Occupational Affairs (Bureau) sent Nicoletti a Notice to Show Cause why the Commonwealth should not revoke his salesperson's and dealership licenses. On June 13, 1994, Nicoletti filed a motion to stay the proceedings until after his release from federal custody, which the Board granted.

Subsequently, the Board notified Nicoletti that a disciplinary hearing would be held before the Board on October 27, 1995, and, after conducting the hearing, the Board entered an Order, dated March 20, 1997, which revoked Nicoletti's salesperson's and dealer's licenses.

On appeal to this Court,[4] Nicoletti raises several constitutional and jurisdictional issues regarding the Board's authority to impose a penalty based upon the underlying law, along with the contention that the Board abused its discretion in revoking his licenses.

Nicoletti raises two jurisdictional challenges to the Board's revocation of his licenses. First, he contends that he could not be subject to the imposition of penalties by the Board because his salesperson's license had not been renewed prior to its revocation, and his dealer's license had been suspended at the time the Board took formal action to revoke it. The Board, however, concluded that Nicoletti maintained a property interest in both his unrenewed salesperson's license, and his suspended dealer's license, and we agree with the Board's conclusion. Nicoletti could have renewed his salesperson's license at any time prior to the Board's action by simply paying the proper licensing fees. Because Nicoletti had acquired *the right* to sell and deal in automobiles, he maintained a property interest in his licenses such that the Board could revoke the right. *Brady v. State Board of Chiropractic Examiners*, 79 Pa.Cmwlth. 608, 471 A.2d 572, *appeal dismissed*, 506 Pa. 83, 483 A.2d 1376 (1984). Nicoletti argues that the suspension by the Board of his dealer's license, after he closed his dealership and

1. Act of December 22, 1983, P.L. 306, *as amended*, 63 P.S. § 818.19(4).

2. 18 U.S.C. § 371.

3. 18 U.S.C. §§ 1341–1342.

4. Our review is limited to determining whether the Board violated Nicoletti's constitutional rights, committed an error of law, or based its conclusion on a material finding of fact that is not supported by substantial evidence. *Ciavarelli v. State Board of Funeral Directors*, 129 Pa. Cmwlth. 305, 565 A.2d 520 (1989).

filed for bankruptcy protection, likewise prevented him from being within the jurisdiction of the Board because he could not be a "dealer" when his license was under suspension. As this Court held in *Brown v. State Board of Pharmacy*, 129 Pa.Cmwlth. 642, 566 A.2d 913 (1989), where a suspended professional license is susceptible to revival, the license holder maintains a property interest in the license. Because Nicoletti maintained a property interest in his licenses, he was within the jurisdiction of the Board for purposes of the Act.

■ In Nicoletti's second jurisdictional argument he contends that his conviction for one count of conspiracy to defraud and two counts of mail fraud should not be considered because they occurred after his salesperson's license lapsed and his dealer's license was suspended, and the crimes were not associated with his status as a licensee under the Act. As noted above, Nicoletti still maintained a property interest in the licenses and thus falls within the jurisdiction of the Board. The Board specifically found that Nicoletti's conviction for conspiracy and mail fraud *did* relate to his licensed profession as a salesperson and dealer. (Board's March 20, 1997 Adjudication & Order at 10.) Under such circumstances, the Board is empowered to discipline licensees such as Nicoletti, pursuant to Section 10(4) of the Act, which provides:

> The board shall have the power to formally reprimand, suspend or revoke any license or refuse to issue or renew any license of an applicant or licensee or a person required to be licensed under this act, if after due notice of and hearing, the person charged is found in violation of or fails to carry out the acts and procedures set forth in this act or is found guilty of committing or attempting to commit ... any of the following acts:
>
> ....
>
> 4) Being a vehicle dealer or salesperson, having ... pleaded guilty, entered a plea of nolo contendere or been found guilty in a court of competent jurisdiction in this or any other state or Federal jurisdiction of forgery, embezzlement, obtaining money under false pretenses, extortion, **conspiracy to defraud,** bribery, odometer tampering **or any other crime involving moral turpitude.**

63 P.S. § 818.19 (emphasis added).

Because Nicoletti maintained a property interest in his licenses, and because he was convicted of conspiracy to defraud, the Board operated within its jurisdiction and authority when it revoked Nicoletti's licenses.

■ Nicoletti also raises several constitutional issues in his petition for review. First, he argues that the Board's revocation of his licenses, based upon his conviction in federal court, represents a violation of the Double Jeopardy Clause contained in both the United States and Commonwealth Constitutions. In *Sweeny v. State Board of Funeral Directors*, 666 A.2d 1137 (Pa.Cmwlth. 1995), this Court had occasion to review the question of whether a license revocation, subsequent to a criminal conviction, violates the double jeopardy protection afforded by both the United States and Commonwealth Constitutions. In that case the licensee was convicted of criminal conspiracy and felony theft for failure to make required disposition of funds while serving as an estate administrator, a matter totally unrelated to his licensed profession as a funeral director. The Board revoked Sweeny's license, and he appealed to this Court on double jeopardy grounds. This Court stated as follows:

> The double jeopardy clauses of both the United States and Pennsylvania Constitutions prohibit multiple punishments for the same offense.... They do not, however, preclude the imposition of a civil penalty for conduct for which a criminal conviction has already been obtained.... As a general rule, the protection against double jeopardy does not apply in civil proceedings, such as those before administrative agencies, that result in civil penalties....
>
> ....
>
> [T]he [United States] Supreme Court [has] recognized that a civil penalty, that is remedial in nature and is not punitive, does not violate an individual's protection from double jeopardy.

*Sweeny*, 666 A.2d at 1139 (citations omitted) (citing *Department of Revenue v. Kurth*

*Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994)).

In this case, the Board stated that "[d]isciplinary action may occur to protect the public from breaches of trust, and to maintain the integrity of the profession." (Board's March 20, 1997 Adjudication and Order at 8–9.) Contrary to Nicoletti's assertion, the revocation of his licenses is a purely remedial civil penalty and does not implicate the protections afforded by the Double Jeopardy Clause of the United States or Commonwealth Constitutions.[5] Because the Board revoked Nicoletti's licenses to protect the interests of the public, there is absolutely no basis to support Nicoletti's contention that the Board violated his constitutional rights.

▮ Nicoletti's next constitutional argument is based on his claim that the Act is void for vagueness. He contends that, because the Act is not specific as to the threshold requirements to be met to obtain a license, the Act is unconstitutionally vague. We disagree. First, acts of the General Assembly enjoy a strong presumption of constitutionality,[6] and the law is well settled that "Legislation will not be invalidated unless it clearly, palpably and plainly violates the Pennsylvania Constitution, and any doubts are to be resolved in favor of a finding of constitutionality." *Pennsylvania AFL–CIO ex rel. George v. Commonwealth,* 691 A.2d 1023, 1031 (Pa.Cmwlth.1997) (citing *Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 370, 485 A.2d 732, 735 (1984)). Additionally, the Board has promulgated regulations,[7] pursuant to a legislative grant of power contained within Section 4 of the Act,[8] establishing the requirements for a license under the Act. Accordingly, we reject the contention that the Act is unconstitutionally vague.

Nicoletti's final constitutional argument addresses his belief that his due process and equal protection rights were violated by the Board when it failed to review the criminal backgrounds of every licensee within the Commonwealth, as requested by Nicoletti, to determine whether *any* licensee had a criminal conviction. Nicoletti asserts that he is aware of other licensees who have previous criminal convictions and requests that he be "afforded the same consideration as those licensees and that he be permitted to re-enter the business." (Petitioner's Brief at 37.) The logical presumption that can be drawn from this argument is that the Board should allow Nicoletti to remain licensed because there are **allegedly** other licensees with criminal convictions in their past. In drafting the Act, our General Assembly provided a statutory mechanism to address such a concern. Section 4 of the Act provides, in pertinent part:

> The Board shall have the power and its duty shall be to:
>
> . . . .
>
> (3) Investigate on its own initiative . . . *or upon the verified complaint in writing of any person,* any allegations of the wrongful act or acts of any licensee or person required to be licensed hereunder. . . .

63 P.S. § 818.4(3) (emphasis added). Nicoletti can meet his civic duty by notifying the Board of licensees whom he knows or suspects may be in violation of the Act, through the procedure authorized by the General Assembly. Succinctly, the Board has not violated Nicoletti's due process or equal protection

---

5. We note that this holding is in keeping with the recent United States Supreme Court decision in *Hudson v. United States,* —— U.S. ——, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). That case involved *the imposition of monetary penalties and occupational debarment on the petitioners, members of the board of directors of two banks in Oklahoma, for violating federal banking laws.* The Supreme Court held that a subsequent criminal prosecution for the same conduct was not barred by the Double Jeopardy Clause of the Fifth Amendment because the earlier administrative proceedings were civil, and not criminal, in nature.

6. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3).

7. *See* 49 Pa.Code § 19.1–.23.

8. Section 4 of the Act provides:
   The Board shall have the power and its duty shall be to:
   . . . .
   (9) Adopt, promulgate and enforce such rules and regulations consistent with this act as are deemed necessary and proper to effectuate the provisions of this act . . .
   63 P.S. § 818.4(9).

rights by refusing to review the record of every other licensee based upon Nicoletti's unsubstantiated assertion that other licensees may have prior criminal convictions.

Finally, Nicoletti raises two issues in claiming the Board abused its discretion in the revocation of his licenses. First, Nicoletti contends that the Board abused its discretion by allowing the admission of a certified packet of information from the Federal District Court for the Western District of Pennsylvania (specifically the indictment against him) and that this information created undue prejudice which denied Nicoletti a fair hearing. Although Nicoletti's counsel objected to the admission of the indictment at the hearing, the Board allowed its admission and noted that only those counts of the indictment concerning Nicoletti's conviction would be considered.[9] An administrative agency's exercise of its discretion cannot be overturned by a reviewing court in the absence of fraud, bad faith or flagrant abuse of discretion. *Burnworth v. State Board of Vehicle Manufacturers, Dealers & Salespersons,* 139 Pa.Cmwlth. 21, 589 A.2d 294 (1991) (citing *Kwalwasser v. Department of Environmental Resources,* 131 Pa.Cmwlth. 77, 569 A.2d 422 (1990)). The record in this case clearly indicates that the Board did not abuse its discretion by the admission of the indictment, especially in view of the Board's acknowledgment that it would not consider those charges of which Nicoletti had not been convicted.

Nicoletti's final contention is that the Board abused its discretion by revoking his licenses. Nicoletti argues that he "has been punished severely and has paid a heavy debt for the convictions he suffered in federal court. To impose the heavy sanction of license revocation as done by the Board in this case will serve no beneficial purpose." (Petitioner's Brief at 34.) While Nicoletti no doubt believes that license revocation is a punishment, the Board's action is remedial and is not punitive in nature. The Board has the authority under the Act[10] to revoke the license of a licensee for a variety of reasons, including a criminal conviction for conspiracy to defraud, in order to protect the public. The exercise of that authority is not an abuse of its discretion.

The order of the Board is affirmed.

### ORDER

**NOW,** January 29, 1998, the order of the State Board of Vehicle Manufacturers, Dealers and Salespersons in the above-captioned matter is hereby affirmed.

---

9. Following Nicoletti's objection, the following exchange took place between the Bureau's counsel and the Board:

[Bureau]:

Well, Mr. Nicoletti was found guilty of counts one, four and five of the Indictment, and thus, it's entirely proper for certainly those counts of the Indictment, if not the entire Indictment, to be offered and admitted into evidence. I mean, the Board obviously needs to know what he was found guilty of, and to just admit the Sentencing Order would be ridiculous. The Board has the right to see the Indictment to which he was found guilty.

I'm going to overrule the objection. We'll admit the documents and the Board's perfectly capable of discounting those indictments of which he was not convicted.

(Transcript of Board's October 27, 1995 Formal Hearing at 11.)

10. 63 P.S. § 818.19.