IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Venus Q. Dunagan, L.P.N., : 
               Petitioner : 
                            : No. 546 C.D. 2018
               v. : 
                            : Argued: December 13, 2018
Bureau of Professional and : 
Occupational Affairs, : 
State Board of Nursing, : 
               Respondent : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: April 10, 2019

       Venus Q. Dunagan (Petitioner) petitions for review of the March 29, 2018 order of the Bureau of Professional and Occupational Affairs, State Board of Nursing (Board), which suspended her practical nursing license for six months pursuant to section 16(a)(5) of the Practical Nurse Law (Law),[1] based upon her plea of *nolo contendere* to one count of disorderly conduct, a misdemeanor of the third degree.

       Petitioner holds a license to practice as a practical nurse, which was issued on July 16, 2014, and current through July 30, 2018. On July 21, 2015,

---

[1] Act of March 2, 1956, P.L. (1955) 1211, *as amended*, 63 P.S. §666(a)(5).

Petitioner was arrested and charged with three drug-related offenses.[2]  The charging document listed the three counts for the drug-related offenses; however, there was a handwritten addition of a fourth count, stating "Count IV: Disorderly Conduct 18 [Pa.C.S. §]5503(a)(1)[3] engaged in tumultuous behavior during the execution of a search warrant."  (Reproduced Record (R.R.) at 15a.)  On March 3, 2016, Petitioner entered a plea of *nolo contendere* to the count of disorderly conduct, as a third degree misdemeanor,[4] and was sentenced to a non-reporting 12-month probationary period with costs.  The other three charges were *nolle prossed*.  (R.R. at 129a, 135a; Board's Finding of Fact (F.F.) Nos. 8-10.)

On April 4, 2016, the Commonwealth, through its prosecuting attorney, filed a one-count order to show cause why Petitioner's license should not be suspended or restricted, or a civil penalty imposed for violating the Law.  Petitioner filed an answer and new matter admitting she pleaded *nolo contendere* to one count

---

[2] Petitioner was charged with (1) manufacturing, delivery, or possession with intent to manufacture or deliver, a felony; (2) possession of marijuana, a misdemeanor; and (3) use or possession of drug paraphernalia, a misdemeanor. In the police report, the officer stated that, having received a call of possible drug activity, he responded to Petitioner's house and observed seven marijuana plants on Petitioner's porch, "right outside the entrance door to the apartment."  (R.R. at 120a.)  Petitioner and her husband acknowledged the plants and stated they were "growing the marijuana for experimental purposes and only used it for themselves."  *Id.*  Upon searching the apartment, the officer found two small containers of marijuana and numerous items of drug paraphernalia. *Id.*

[3] This section states, "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:  (1) engages in fighting or threatening, or in violent or tumultuous behavior[.]" 18 Pa.C.S. §5503(a)(1).

[4] Disorderly conduct is "a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense."  18 Pa.C.S. §5503(b).

2

of disorderly conduct, denying that the offense is a crime of moral turpitude, and requesting a hearing. In her answer, Petitioner also included a motion to strike, seeking the redaction of any references in the record to the three charges that were *nolle prossed*. The Board appointed a hearing examiner to conduct a hearing and issue a proposed adjudication and order. (Board's Final Adjudication and Order at 1-2; R.R. at 32a-35a.)

A hearing was held on September 6, 2016, and as a preliminary matter, the hearing examiner denied Petitioner's motion to strike. Petitioner, represented by counsel, appeared at the hearing and testified on her own behalf. She admitted that she pleaded *nolo contendere* to disorderly conduct. However, Petitioner denied she engaged in any "tumultuous" behavior and stated that she received the disorderly conduct charge because that was the offense the district attorney and her court-appointed attorney "agreed on in regards to saving my license to practice as a licensed practical nurse." (R.R. at 85a.) Petitioner contended that her sentence was minimal with only a 12-month non-reporting probationary period and payment of costs. Finally, Petitioner reiterated her position that disorderly conduct is not a crime of moral turpitude. (R.R. at 85a-89a; Hearing Examiner's Proposed Adjudication at 8.)

On January 7, 2017, the hearing examiner issued a proposed adjudication and order. Because the parties stipulated that Petitioner was capable of practicing practical nursing safely, the hearing examiner determined that the sole issue was whether a misdemeanor disorderly conduct offense constitutes a crime of moral turpitude, which would subject Petitioner to discipline under section 16(a)(5) of the Law. The hearing examiner reviewed the elements of the crime of disorderly conduct and the definition of tumultuous conduct, considered Petitioner's actual

sentence in comparison with her potential maximum sentence, and ultimately concluded that there was insufficient evidence to establish that Petitioner's crime rose to the level of moral turpitude. Accordingly, the hearing examiner's proposed order dismissed the order to show cause. (Hearing Examiner's Proposed Adjudication 10-12.)

The Board issued a notice of its intent to review the proposed report and, after the Commonwealth filed exceptions to the hearing examiner's proposed adjudication, the Board conducted its own review of the record. On March 29, 2018, the Board issued its final adjudication and order, concluding that Petitioner's conviction was a crime of moral turpitude, and suspended her license for a period of six months and ordered her to complete six continuing education hours in ethics. In its findings, the Board listed the three counts Petitioner was originally charged with that were later *nolle prossed*. (Board's F.F. No. 6.) In its reasoning, the Board noted that, while Petitioner denied engaging in tumultuous behavior during the execution of a search warrant, the court documents showed otherwise. In doing so, the Board stated, she was arguing that the conduct she admitted to in her guilty plea did not take place. (Board's op. at 8.)

Consulting this Court's decision in *Bowalick v. Department of Education*, 840 A.2d 519 (Pa. Cmwlth. 2004), the Board held the following:

> [Petitioner]'s engaging in tumultuous behavior during the execution of a search warrant is conduct contrary to the accepted and customary rule of right and duty as search warrants are legal documents upon which society relies so that law and order may be maintained. A disruption of a search warrant certainly has the potential for social disruption as it interferes with law enforcement performing a function necessary for public protection. The Board finds that a conviction for Disorderly Conduct which consists of tumultuous behavior in the execution of a search warrant is

4

a crime of moral turpitude and therefore, count One of the Order to show Cause is sustained.

(Board's op. at 9.) Petitioner filed for a stay of the final adjudication, which was granted.

Petitioner now petitions for review of the Board's decision,[5] asserting (1) the Board abused its discretion by imposing a six-month suspension of her license following her *nolo contendere* plea to a charge of disorderly conduct for tumultuous behavior because the sanction was not reasonably related to protecting the health, safety, and welfare of the public; and (2) the Board erred by determining that disorderly conduct is a crime of moral turpitude.

## Discussion

Section 16(a) of the Law authorizes the Board to suspend or revoke a license where the licensee has been convicted of or has pleaded guilty or *nolo contendere* to a crime of moral turpitude. 63 P.S. §666(a)(5).

Title 22 of the Pennsylvania Code states that moral turpitude includes:

(1) That element of personal misconduct in the private and social duties which a person owes to his fellow human beings or to society in general, which characterizes the act done as an act of baseness, vileness or depravity, and contrary to the accepted and customary rule of right and duty between two human beings.

(2) Conduct done knowingly contrary to justice, honesty or good morals.

---

[5] "This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, or whether findings of fact are supported by substantial evidence." *Bethea–Tumani v. Bureau of Professional & Occupational Affairs*, 993 A.2d 921, 925 n.6 (Pa. Cmwlth. 2010).

(3) Intentional, knowing or reckless conduct causing bodily injury to another or intentional, knowing or reckless conduct which, by physical menace, puts another in fear of imminent serious bodily injury.

22 Pa. Code §237.9(a). Black's Law Dictionary defines moral turpitude as,

> Conduct that is contrary to justice, honesty, or morality . . . . 'Moral turpitude means, in general, shameful wickedness– so extreme a departure from ordinary standards of honest, good morals, justice, or ethics as to be shocking to the moral sense of the community. It has also been defined as an act of baseness, vileness, or depravity in the private and social duties which one person owes to another, or to society in general, contrary to the accepted and customary rule of right and duty between people' 50 Am. Jur. 2d *Libel and Slander* § 165, at 454 (1995).

BLACK'S LAW DICTIONARY 1101 (9th ed. 2009).

"A determination of whether a crime involves moral turpitude will be determined based solely upon the elements of the crime. The underlying facts or details of an individual criminal charge, indictment or conviction are not relevant to the issue of moral turpitude." 22 Pa. Code §237.9(b); *see also Startzel v. Department of Education*, 562 A.2d 1005, 1007 (Pa. Cmwlth. 1989) ("Determination of whether a crime involves moral turpitude turns on the elements of the crime, not on an independent examination of the details of the behavior underlying the crime."). This Court has previously addressed crimes of moral turpitude in the context of professional license suspensions:

> Considering the Pennsylvania Code definition and the cases addressing moral turpitude in different statutory contexts, we conclude a crime of moral turpitude requires a reprehensible state of mind or *mens rea*. Thus, it may be "an act of baseness, vileness, or depravity, contrary to the accepted and customary rule of right and duty between two human beings." 22 Pa. Code § 237.9(b)(1). Such an act requires at least knowledge of private impropriety or of the

6

> potential for social disruption. Also, an act of moral turpitude may consist of intentional, knowing or reckless conduct. 22 Pa. Code § 237.9(b)(2), (3). Thus, crimes involving dishonesty, such as fraud and theft by deception, and specific intent drug trafficking offenses are crimes of moral turpitude.

*Bowalick*, 840 A.2d at 523-24. In the past, this Court has held that crimes such as mail fraud, theft by deception, theft by failure to make required disposition of funds, conspiracy to distribute cocaine, possession with intent to distribute, and federal mail fraud and conspiracy to distribute and possess a controlled substance constitute crimes of moral turpitude. *See Krystal Jeep Eagle, Inc. v. Bureau of Professional and Occupational Affairs, State Board of Vehicle Manufacturers, Dealers and Salespersons*, 725 A.2d 846 (Pa. Cmwlth. 1999); *Foose v. State Board of Motor Vehicle Dealers Manufacturers and Salespersons*, 578 A.2d 1355 (Pa. Cmwlth. 1990); *Startzel*, 562 A.2d at 1005; *Yurick v. Department of State, Bureau of Professional and Occupational Affairs, Board of Osteopathic Examiners*, 402 A.2d 290 (Pa. Cmwlth. 1979).

In Pennsylvania, disorderly conduct is "not intended as a catchall for every act which annoys or disturbs people," *Commonwealth v. Vetter*, 149 A.3d 71, 77 (Pa. Super. 2016) (quoting *Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. 2005)), and instead, is designed to prevent one from "recklessly creating a risk" of "public inconvenience, annoyance or alarm," 18 Pa.C.S. §5503. "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Commonwealth v. Greene*, 189 A.2d 141, 144 (Pa. 1963).

"[T]umultuous" is defined as

7

**1:** marked by tumult: full of commotion and uproar: RIOTOUS, STORMY, BOISTEROUS . . .
**2:** tending or disposed to cause or incite a tumult . . .
**3:** marked by violent or overwhelming turbulence or upheaval . . . .

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2462 (1961). Similarly, "tumult" is defined as,

> **1a:** disorderly and violent movement, agitation or milling about, of a crowd accompanied usu[ally] with great uproar and confusion of voices: COMMOTION, TURMOIL . . .
> **b:** a noisy and turbulent popular uprising: DISTURBANCE, RIOT . . .
> **2a:** a confusion of loud noise and usu[ally] turbulent or agitated movement: HUBBUB, DIN . . .
> **b:** a random or disorderly medley or profusion (as of objects or colors): JUMBLE, RIOT . . . .
> **3a:** violent agitation of mind or feelings: highly disturbing mental or emotional excitement or stress: FERMENT, TURBULENCE . . .
> **b:** a violent outburst of unrestrained emotion: PAROXYSM . . . .

*Id.*

Noting that her ability to safely practice medicine was stipulated to during the hearing, Petitioner argues that the Board abused its discretion in imposing the six-month suspension of her license, which she contends is a penalty more severe than that issued by the criminal justice system. Petitioner further argues that the suspension is not justifiable as necessary to protect the public health and welfare, as is required.

With regard to whether disorderly conduct is a crime of moral turpitude, Petitioner cites to the test employed by the Board of Immigration Appeals, which asks "whether the act is accompanied by a vicious motive or corrupt mind." *Partyka v. Attorney General of the United States*, 417 F.3d 408, 413 (3d Cir. 2005) (internal

quotation marks omitted). Petitioner contends, "Like questions of deportation, professional licenses concern the most basic ability of a person to earn a living." (Petitioner's brief at 21.) Petitioner cites the Third Circuit's pronouncement that "serious crimes committed recklessly" can be found to involve moral turpitude if done with a "conscious disregard of a substantial and unjustifiable risk of serious injury or death." *Partyka*, 417 F.3d at 414. Petitioner also notes that the Third Circuit "has drawn a line at recklessness, and has held that moral turpitude does not inhere in a crime merely requiring a mental state of negligence." *Mehboob v. Attorney General of the United States*, 549 F.3d 272, 276 (3d Cir. 2008).[6]

Petitioner asserts that disorderly conduct requires intent or recklessness and that the elements of the offense are the following: "(a) a person; (b) with the intent to cause public inconvenience or annoyance or harm or recklessly creating a risk; (c) engages in fighting or threatening or violent or tumultuous behavior." (Petitioner's brief at 20.) Accounting for the additional element of tumultuous behavior, Petitioner states, "[T]he generic crime of disorderly conduct under section 5503(a)(1) for tumultuous behavior lies where a person consciously disregards a substantial and unjustifiable risk while causing a tumult." *Id.*

Petitioner argues that the most lenient description of moral turpitude requires knowledge that the act is done contrary to justice, honesty, or good morals and that disorderly conduct is not such a crime for three reasons: it is not a crime of

---

[6] In applying this test, Petitioner observes that the Third Circuit has held that a third-degree aggravated assault on a police officer was not a crime involving moral turpitude because the *mens rea* was lacking; that reckless endangerment was not a crime of moral turpitude; and that attempted reckless endangerment in the first degree was not a crime of moral turpitude because the requisite intent required is not present in such a crime. *See Mahn v. Attorney General of the United States*, 767 F.3d 170 (3d Cir. 2014); *Partyka*, 417 F.3d at 408; *Knapik v. Ashcroft*, 384 F.3d 84 (3d Cir. 2004).

9

fraud and therefore not done contrary to honesty; it is not a crime done contrary to good morals, as one can be guilty for merely causing a commotion; and, finally, it requires knowledge that the act is morally reprehensible. Because disorderly conduct does not involve the necessary *mens rea*, Petitioner asserts that it cannot be a crime of moral turpitude.

On the other hand, Petitioner notes that one can be convicted of disorderly conduct for recklessness—a lesser standard than knowledge—and the supporting act can be "from a mere noise[-]related disturbance," which cannot "rise to the antithesis of good morals." *Id.* at 21. Put simply, Petitioner states that, if disorderly conduct is held to be a crime of moral turpitude, "the standard of a crime of moral turpitude is eviscerated and any person holding a professional license in the Commonwealth of Pennsylvania stands to suffer sanctions at the conviction, guilty or nolo contendere plea of any crime." *Id.*

Relatedly, Petitioner argues that the Board improperly looked beyond the elements of the crime of disorderly conduct and considered her underlying behavior. Petitioner contends that the Board was "swayed by the unredacted record despite the impropriety of considering anything other than a plea of guilty, nolo contendere, or a conviction when imposing sanctions," and that the Board is seeking to sanction her based upon the three *nolle prossed* charges. *Id.* at 22. In support of this argument, she notes that, in its findings, the Board specifically enumerated the three withdrawn charges, "evidencing the Board's clear intent to rely on those findings." *Id.*[7]

---

[7] Petitioner also cites our unreported opinion in *Campbell v. Bureau of Professional and Occupational Affairs, State Board of Medicine* (Pa. Cmwlth., No. 44 C.D. 2014, filed July 8, 2014), where this Court found that the board did not abuse its discretion when it suspended a petitioner's license for six months (followed by three years of probation) where he filed a false biennial renewal **(Footnote continued on next page…)**

10

With regard to the Board's position, it first notes that disorderly conduct is a summary offense in all cases except instances in which the actor's intent is to cause substantial harm or serious inconvenience, or the actor persists after reasonable warning or request to desist, in which case it is a third-degree misdemeanor. *See* 18 Pa.C.S. §5503(b). Thus, the Board contends that, "by virtue of the grading of [Petitioner's] offense and Petitioner's plea to third-degree misdemeanor disorderly conduct, Petitioner engaged in tumultuous behavior with intent to cause substantial harm or serious inconvenience or persisted in engaging in tumultuous behavior after a reasonable warning or request to desist." (Board's brief at 10.)

The Board also contends that the federal cases cited by Petitioner, which analyze whether a crime is a deportable offense under the Immigration and Naturalization Act, are inapplicable "to the present appeal as they construe a federal statute and are totally unrelated to the intent of the Pennsylvania General Assembly in its drafting and passage of the Practical Nurse Law." (Board's brief at 11.) The Board also notes that those cases refer to convictions involving an element of recklessness whereas Petitioner's third-degree misdemeanor disorderly conduct conviction "demonstrates a conviction including elements of intentional or knowing conduct." *Id.*

---

**(continued…)**

registration, which failed to disclose that he was arrested for drug possession. Petitioner appears to argue that, when considering the petitioner's conduct in *Campbell*, which included making false statements, and that she received a similar penalty for her conduct which did not involve falsehoods, the Board abused its discretion by imposing the same sanction as in *Campbell*. However, as the Board notes, this case is not particularly analogous since it involved misconduct of a different nature, under different facts, and the petitioner violated a different section of the act applicable in that case. Furthermore, it is not entirely clear that the Board is required to be uniform in setting penalties, as Petitioner does not cite to any section of the Law which states as much.

Addressing Petitioner's argument that if disorderly conduct is a crime of moral turpitude, then a mere noise-related disturbance would qualify, the Board asserts that Petitioner ignores that her offense was graded as a third-degree misdemeanor, evidencing that her tumultuous behavior "was either intentional, with the intent being to cause substantial harm or serious inconvenience or persistent tumultuous behavior after a reasonable warning or request to desist." *Id.* at 12. The Board asserts that the elevation of her offense from a summary offense to a misdemeanor "removes the component of recklessness and leaves us with either intentional or knowing conduct, and further elevates the conviction from one being for a mere disturbance to one with the intention to cause substantial harm or serious inconvenience, or knowingly refusing to stop causing the harm or inconvenience." *Id.*

With regard to Petitioner's allegation that the Board considered factors beyond the elements of her crime, the Board appears to concede that it erred by "referencing the context of Petitioner's tumultuous behavior as being during the execution of a search warrant, pulling that language from the handwritten note on the amended Criminal Information," *see* R.R. at 129a; however, it argues that, to the extent this was a "flaw," it nonetheless properly concluded that Petitioner's crime was one of moral turpitude and notes that this Court may affirm on grounds other than those relied upon by the tribunal below. (Board's brief at 13).

As to the Board's exercise of discretion, the Board observes that the six-month active suspension and six hours of continuing education in ethics sanction it imposed was "a substantially more lenient penalty than the maximum authorized by the Act," and was neither arbitrary nor capricious. *Id.* at 14. Further, the Board reiterates this Court's standard of review, noting that the fact that a reviewing court

12

might have a different opinion as to the appropriate sanction is not sufficient grounds for reversal, as there must be proof of fraud, bad faith, or blatant abuse of discretion. The Board notes that Petitioner does not assert that it acted in bad faith, but rather argues that it was improperly influenced by the presence of her three original drug-related charges in the record. The Board counters by citing the fact that the Commonwealth stipulated that she was safe to practice the profession because she was not charged for being addicted to alcohol or drugs under the impairment section of the Law. Further, the Board emphasizes that there are "no findings and [or] discussion anywhere in the Board's Final Order to indicate that the Board was improperly influenced in any way by the inclusion of the Criminal Complaint and Criminal Information which contained all of the offenses for which Petitioner was originally charged." *Id.* at 17. The Board analogizes to our holding in *Nicoletti v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 706 A.2d 891 (Pa. Cmwlth. 1998), in which we held that the Board of Vehicle Manufacturers, Dealers, and Salespersons did not err in admitting a federal indictment into the record where the board stated that only those counts of the indictment concerning his conviction would be considered.

Finally, the Board observes that Petitioner's penalty resulted, in part, from her lack of acceptance of responsibility or remorse. In its final adjudication and order, the Board took particular note of the fact that Petitioner denied any wrongdoing and, in particular, engaging in tumultuous behavior. In doing so, the Board felt Petitioner was attempting to collaterally attack her underlying conviction. *See* Board's op. at 9-10.

We disagree with Petitioner's argument that the presence of the charges in the record inappropriately swayed the Board. The Board merely listed the offenses

13

Petitioner was originally charged while noting they were later dismissed. Nothing about this was false or inflammatory and Petitioner has not demonstrated that this was a legal error. The Board simply included in its findings something that did, in fact, happen: Petitioner was charged with those crimes and they were later dropped. Moreover, like the Board in *Nicoletti*, here, the Board's opinion did not contain any analysis devoted to the dismissed charges and, further, it included a finding that Petitioner was "able to safely practice the profession," given that she was not being charged under the Law for addiction. (Board's op. at 5.) Thus, while it did not specifically state in the opinion that it would not consider the *nolle prossed* charges, the Board seemed to acknowledge that the issue of her involvement with drugs was not to be considered by stating in a finding that Petitioner was not being prosecuted under the Law for addiction to drugs or alcohol. Notably, in the unreported *Campbell* case Petitioner cites, we held that the mere fact that documents concerning the petitioner's arrests were in the certified record did not invalidate the Board's adjudication. *See Campbell*, slip op. at 8 (Where nothing in the Board's adjudication indicated it considered the excluded documents, "[t]he mere fact that the documents concerning [the petitioner's] arrests [were] in the certified record [did] not invalidate the Board's adjudication.").

We turn now to the crux of the issue in this case, which is whether the fact that Petitioner was charged with disorderly conduct as a misdemeanor eliminates the possibility of recklessness and requires that her mental state was knowing or intentional, as the Board contends. As noted above, the determination of whether a crime involves moral turpitude is based solely upon the elements of the crime. 22 Pa. Code §237.9(b).

Disorderly conduct is defined as the following:

14

**(a) Offense defined.**--A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
> (2) makes unreasonable noise;
> (3) uses obscene language, or makes an obscene gesture; or
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

**(b) Grading.**--An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

**(c) Definition.**--As used in this section the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. §5503. Title 22 of the Pennsylvania Code states that moral turpitude includes:

> (1) That element of personal misconduct in the private and social duties which a person owes to his fellow human beings or to society in general, which characterizes the act done as an act of baseness, vileness or depravity, and contrary to the accepted and customary rule of right and duty between two human beings.

> (2) Conduct done knowingly contrary to justice, honesty or good morals.

> (3) Intentional, knowing or reckless conduct causing bodily injury to another or intentional, knowing or reckless conduct which, by physical menace, puts another in fear of imminent serious bodily injury.

22 Pa. Code §237.9(a).

Here, we disagree with the Board that intending to cause substantial harm or serious inconvenience or persisting in disorderly conduct constitutes either (1) an act of baseness, vileness, or depravity, and contrary to the accepted and customary rule of right and duty between two human beings; (2) conduct done knowingly contrary to justice, honesty, or good morals; or (3) intentional, knowing, or reckless conduct causing bodily injury to another, or which, by physical menace, puts another in fear of imminent serious bodily injury. 22 Pa. Code §237.9. Our precedent in *Bowalick* is instructive. There a teacher appealed from the summary revocation of his teacher's certification following his guilty plea for simple assault. *Bowalick*, 840 A.2d at 522. We reversed and remanded, noting that one could be convicted of simple assault for a variety of behaviors, including by entering into a fight or scuffle by mutual consent, a third degree misdemeanor, in which case, the actor could lack a reprehensible state of mind. *Id.* at 524. We concluded that, although many manifestations of simple assault are abhorrent, because one could be convicted of simple assault for behavior which does not necessarily satisfy the definition of moral turpitude, *i.e.*, in the context of a fight or scuffle by mutual consent, the Department of Education was incorrect to assert that simple assault is always a crime of moral turpitude. *Id.* at 525.

Likewise here, one may be convicted of disorderly conduct as a misdemeanor in the third degree for a variety of behaviors, including persisting in making an unreasonable noise, using obscene language or gestures, or creating a hazardous or physically offensive condition by any act serving no legitimate purpose

16

to the actor. We are confident that one who commits disorderly conduct by, for example, persisting in making "an unreasonable noise," 18 Pa.C.S. §5503(a)(2), or using "obscene language," i*d.* §5503(a)(3), has not committed a crime of moral turpitude with the requisite reprehensible state of mind. Moreover, disorderly conduct, even graded as a third degree misdemeanor, is wholly unlike the crimes which this Court has previously deemed crimes of moral turpitude, such as mail fraud, theft by deception, conspiracy to possess and distribute controlled substances, etc. *See Krystal Jeep*; *Foose*; *Startzel*; *Yurick*. Thus, because there are numerous iterations of disorderly conduct wherein the actor cannot be said to have committed a crime of moral turpitude, the Board erred in suspending Petitioner's practical nursing license for six months based upon her *nolo contendere* plea to disorderly conduct.

Accordingly, the order of the Board is reversed.

_____
PATRICIA A. McCULLOUGH, Judge

17

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Venus Q. Dunagan, L.P.N.,       :
          Petitioner      :
                         :   No. 546 C.D. 2018
          v.              :
                         :
Bureau of Professional and      :
Occupational Affairs,           :
State Board of Nursing,       :
          Respondent   :

## _ORDER_

AND NOW, this 10th day of April, 2019, the March 29, 2018 order of the Bureau of Professional and Occupational Affairs, State Board of Nursing is hereby reversed.

_____
PATRICIA A. McCULLOUGH, Judge