2016 PA Super 216

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA<br><br>Appellant<br><br>v.<br><br>JOHN RICHARD VETTER, III | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br>No. 1400 MDA 2015 |

Appeal from the Order Dated July 14, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0001084-2014

BEFORE:  SHOGAN, J., OTT, J., and STRASSBURGER, J.[*]

OPINION BY OTT, J.:                                **FILED SEPTEMBER 27, 2016**

The Commonwealth appeals from the Order dated July 14, 2015, in the Court of Common Pleas of Berks County, granting Defendant, John Richard Vetter, III's, motion to suppress evidence and Writ of *Habeas Corpus*, thereby terminating the prosecution against Vetter.  In this timely appeal, the Commonwealth raises three arguments: (1) the trial court erred in not classifying the action between Vetter and the Pennsylvania State Trooper, Corporal Raymond O'Donnell, as a mere encounter, (2) the trial court erred in failing to determine Corporal O'Donnell had reasonable suspicion to stop Vetter for the summary offence of disorderly conduct, and (3) the trial court erred in granting Vetter *habeas corpus* relief, thereby

_____

[*] Retired Senior Judge assigned to the Superior Court.

denying the Commonwealth the ability to appeal the adverse decision. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

We glean the underlying facts of this matter from the notes of testimony from the suppression hearing held on June 3, 2015. The only witness to testify was the arresting officer, Corporal Raymond O'Donnell, Pennsylvania State Police, who, at the time was stationed with Troop L, Hamburg Station. N.T. Suppression Hearing, 6/3/2015 at 4-5. On December 14, 2013 at approximately 8:00 PM,[1] Corporal O'Donnell was on patrol on southbound State Route 61, Perry Township. *Id*. at 5. It had been snowing and was still snowing at that time. *Id*. at 6. Relevant to this appeal, Corporal O'Donnell testified on direct examination:

> I observed the vehicle [Vetter's car] stopped in the traveling lanes of southbound Route 61 with the driver's side door opened and the occupant of the vehicle standing outside the vehicle in between the door and his vehicle with his back towards me as though – and his hands were in front of him as though he was urinating in the roadway. And really, immediately prior to seeing this vehicle stopped, I wasn't that much behind a vehicle which had to go around the vehicle where the individual was stopped, standing outside to proceed onto State Route 61 south.
>
> ***
>
> His vehicle was parked on the roadway of 61 going south. His door was open, and he was standing right at the A pillar with his

---

[1] A copy of the dash-cam video was presented to the suppression court as evidence. The video has no date or time signature on it.

back towards oncoming traffic and his hands down in front of him.[2]

\*\*\*

In this section, 61 is 2 lanes traveling south. I don't recall if it's one lane going north or two lanes going south [sic]; but it's paved divided roadway, north and south travel lanes. And in the area we're talking about was two particular lanes going south.

\*\*\*

Q: Now, was this traffic stopped – do you know which lane it was stopped in?

A: It would have been the right travel lane.

Q: Now, is there a guard rail that runs along this road?

A: There is.

Q: How far from the guard rail would you say that car was?

A: At least a car width.

Q: And that location of the car would be reflected in the video?

A: Yes.

Q: Now, after you pulled up, what did this – the operator of this vehicle do?

A: He got back inside the driver's seat and proceeded to drive south on 61.

Q: How far did he get?

A: Not very far; I activated my lights.

---

[2] Corporal O'Donnell testified he did not see Vetter urinating nor did he see any indication he had been urinating. *Id*. at 7.

Q: Was that after he pulled away or as he was getting into the car?

A: As he was getting in the car.

Q: What was the reason for the traffic stop?

A: Initially, due to the road conditions, I thought he may have been stuck on the roadway. I was seeing if he needed any kind of assistance. But when he got back in the driver's seat and began to gain forward momentum, it was because of the traffic violation[3] that he was stopped on the roadway and standing on the roadway.

*Id*. at 6-9.

After the traffic stop was initiated, Corporal O'Donnell determined Vetter was intoxicated.

However, based upon the testimony and a review of the dash-cam video, the suppression court determined Corporal O'Donnell did not possess either a reasonable suspicion or probable cause to believe that Vetter violated Section 3351:

The video shows in the snow storm that the vehicle stopped as far off the roadway as possible, and it was clearly not in the lane of travel. No vehicles were obstructed and in able [sic] to pass [Vetter] with no swerving or breaking. Furthermore, the video shows that the vehicle was visible for at least 500 feet in the snow storm.[4]

---

[3] This was a claimed violation of regulations regarding "stopping, standing, or parking outside of business, and residential districts." 75 Pa.C.S. § 3351.

[4] We have reviewed the dash-cam video and agree that the suppression court has accurately described it. We note that at least one vehicle is shown passing Vetter's car without any problem.

***[5]

> In this case, Corporal Donnell [sic] lacked reasonable suspicion or probable cause to believe that [Vetter] was in violation of the motor vehicle code.

Suppression Court Conclusions of Law,[6] 6/15/2015, at ¶ 21. Accordingly, Vetter's motion to suppress evidence obtained as a result of the traffic stop was granted.

Our standard of review for a Commonwealth appeal from an order granting suppression is well settled:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

**Commonwealth v. Miller**, 56 A.3d 1276, 1278-79 (Pa. Super. 2012).

In the first issue, the Commonwealth claims the trial court erred in not classifying the interaction between Vetter and Corporal O'Donnell as a mere encounter. The Commonwealth argues the police have a duty to render assistance to disabled motorists. The initial reason Corporal O'Donnell

---

[5] Here, the suppression court found there was no actual evidence that Vetter had urinated outside his car.

[6] Although labeled as "conclusions of law" the first portion describing the video is clearly a factual determination.

testified to for stopping was to determine whether Vetter's vehicle was stuck in the snow. In other circumstances, such an argument might prevail. However, here, Corporal O'Donnell admitted his concern that Vetter might be a stranded motorist vanished when Vetter got into his car and started to drive away. *See* N.T. Suppression Hearing at 9. Further, he admitted he stopped the moving car due to his belief that Vetter had violated Section 3351 of the Motor Vehicle Code.

Logically, one cannot stop a moving vehicle in order to determine whether that vehicle is stranded. Additionally, stopping a vehicle on the basis of a violation of 75 Pa.C.S. § 3351 requires the police officer to possess probable cause, as that is a violation that does not require further investigation. *See Commonwealth v. Salter*, 121 A.3d 987, 993 (Pa. Super. 2015) (explaining when a traffic stop requires probable cause or reasonable suspicion). Accordingly, the Commonwealth's claim the action between Vetter and Corporal O'Donnell was a mere encounter is without merit.

Next, the Commonwealth argues that regardless of any probable cause or lack thereof regarding a potential violation of 75 Pa.C.S. § 3351, Corporal O'Donnell did possess probable cause to stop Vetter's vehicle based upon the suspicion he had been urinating on the street. The Commonwealth argues such public urination is a violation of 18 Pa.C.S. § 5503, disorderly conduct. The Commonwealth argues that seeing Vetter positioned as he was, "door was open, and he was standing right at the A pillar with his back towards

oncoming traffic and his hands down in front of him." N.T. Suppression Hearing, *supra* at 7, provided the Corporal with reasonable suspicion to believe Vetter was engaging in disorderly conduct by relieving himself in the roadway, thereby making the stop of Vetter's vehicle allowable. This argument is unavailing.

Although the notes of testimony demonstrate Corporal O'Donnell's belief that Vetter was urinating at the time the trooper initially encountered Vetter, Corporal O'Donnell never claimed he stopped Vetter on the basis of a suspected violation of the criminal statute 18 Pa.C.S. § 5503; but only for the perceived violation of the motor vehicle code, 75 Pa.C.S. § 3351. Further, the certified record shows that the Commonwealth did not raise the argument regarding disorderly conduct until filing its Pa.R.A.P. 1925(b) statement of errors complained of on appeal. However, "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Cash*, ___ A.3d ___, 2016 WL 3002910 at * 10, Pa.R.A.P. 302(a).

Additionally, even if the issue had not been waived, the Commonwealth was unlikely to have prevailed. The Commonwealth has asserted that,

> Precedent dictates that public urination constitutes criminal activity, as this action is one of the many bases for a charge of disorderly conduct. *See Commonwealth v. Strickler*, 757 A.2d 884, 890 n.9 (Pa. 2000)(citing *Commonwealth v. Williams*, 568 A.2d 1281, 1288 (Pa. Super. 1990));

> ***Commonwealth v. Barber***, 889 A.2d 587, 595 (Pa. Super. 2005).

Appellant's Brief at 13.

None of these cases actually hold that public urination is a basis for disorderly conduct.[7]

Disorderly conduct is statutorily defined at 18 Pa.C.S. § 5503, which states, in relevant part:

_____

[7] In ***Strickler***, the defendant and a companion were observed urinating at the side of a public roadway near a farm property. However, ***Strickler*** did not challenge the sufficiency of the evidence, so the issue was not before any appellate court. The footnote in ***Strickler*** merely noted that in ***Commonwealth v. Williams***, the defendant was arrested for disorderly conduct after being observed publically urinating. On that basis, without further analysis, the Supreme Court stated that prevailing precedent allowed public urination to be treated as the predicate for disorderly conduct.

However, the issue in ***Williams*** was not whether public urination was a predicate to disorderly conduct. In ***Williams***, the defendant parked his car on the sidewalk and urinated on a building in downtown Denora. He was arrested for disorderly conduct, a summary offense, but challenged the search incident to arrest for a summary offense. Accordingly, in ***Williams***, there was no analysis of public urination as a predicate for disorderly conduct.

The issue in ***Barber*** was whether a tip from an identified caller to the police complaining of a man urinating in a parking lot, drinking beer and driving a van (which was identified by description and license plate) provided reasonable suspicion to stop said van. The ***Barber*** decision incorrectly noted that ***Strickler*** held that observation of public urination provided reasonable suspicion. ***See Commonwealth v. Barber***, 889 A.2d at 595. As noted, the ***Strickler*** decision merely commented, in a footnote, about ***Williams***. Accordingly, the Commonwealth is incorrect in asserting that "precedent dictates" public urination constitutes criminal activity.

> A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> . . .
>
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a). The statute specifically includes "highways" among public places. *See* Section 5503(c).

Subsection 4 is the only applicable section to public urination, creating a physically offensive condition. However, we are also mindful that,

> The offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people; it is not to be used as a dragnet for all the irritations which breed in the ferment of a community. It has a specific purpose; it has a definite objective, it is intended to preserve the public peace.

*Commonwealth v. Maerz*, 879 A.2d 1267, 1269 (Pa. Super. 2005) (citation omitted).

Additionally, "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Commonwealth v. Hock*, 728 A.2d 943, 946 (Pa. 1999) *quoting Commonwealth v. Greene*, 189 A.2d 141, 144 (Pa. 1963).

Here, the Commonwealth has presented no evidence or argument to demonstrate **how, under the specific facts of this case**, where Vetter appeared to be urinating at the side of a highway, in the dark of night, in a snow storm, away from any residence or businesses, positioning himself such that he was largely protected from view, such action was likely to lead

to tumult and disorder. Because of this we cannot agree that, based on §
5503, the Commonwealth would have prevailed on the issue of reasonable
suspicion of committing disorderly conduct, even had it been preserved.

Finally, we agree with the Commonwealth that when granting a motion
to suppress evidence, such that the result is to effectively terminate the
matter, the trial court should nonetheless refrain from immediately
discharging the defendant to allow the Commonwealth time to appeal the
adverse ruling. However, the Commonwealth's appeal in this matter
successfully found its way to our Court. Therefore, the Commonwealth
suffered no prejudice.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/27/2016