J-S27029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MARKIDA THOMAS | : | No. 1192 EDA 2016 |

Appeal from the Order March 16, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0012195-2014

BEFORE:   GANTMAN, P.J., OTT, J. and PLATT, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED JULY 11, 2017**

The Commonwealth appeals from the order entered March 16, 2016, in the Philadelphia County Court of Common Pleas, granting appellee Markida Thomas's motion to suppress a firearm recovered during an illegal search.[1]  On appeal, the Commonwealth contends the trial court erred in concluding the search was illegal because the officer had reasonable suspicion to suspect Thomas's purse might contain an illegal firearm when, minutes earlier, an off-duty officer observed the weapon in Thomas's

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Pursuant to Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth properly certified in its notice of appeal that the order "terminates or substantially handicaps the prosecution."  Notice of Appeal, 4/14/2016.  **See** Pa.R.A.P. 311(d).

companion's waistband, and a subsequent pat-down of the companion revealed no weapon. Based on the following we affirm.

The facts underlying Thomas's arrest are aptly summarized by the trial court as follows:

> On October 10, 2014, Police Officer Rainford Thomas #3268 was in his unmarked personal vehicle on the 1200 block of North 52nd Street in Philadelphia. Officer Thomas was off-duty at the time, stopping to pick up food from a neighborhood eatery. While parking, Officer Thomas got into a verbal dispute with another individual attempting to park his car. The unknown driver exited his vehicle and began to yell in Officer Thomas's direction while gesturing with his hands. During this encounter, Officer Thomas observed a black semiautomatic weapon in the man's waistband. The unknown male did not, however, indicate toward the weapon in any way. He did not make any verbal threats and no physical altercation ensued. After the brief interaction, the man got back into his vehicle, drove northbound, and made a U-turn. At that point, Officer Thomas went into the store and called the police. Subsequent to calling the police, Officer Thomas observed that male exit the vehicle along with another female, later identified as [] Thomas. It wasn't until that moment that Officer Thomas realized there was another individual in the car with the male. The car had tinted windows, which obscured Officer Thomas's ability to see inside the vehicle. He had not provided a description of [] Thomas to the back-up officers. Upon exiting the car, Officer Thomas observed the two individuals walk into Tasties Restaurant. Officers arrived less than 5 minutes later.

> Officer Michelle Barker #2872 testified that she received a flash description for a black male in a gold Crown Vic who was armed with a silver and black handgun. At the direction of Officer Thomas, Officer Barker entered Tasties Restaurant and searched the male. Officer Thomas then explained that there was a female with the male suspect, and described her as having braided hair or possibly dreadlocks. Officer Barker initially approached the wrong female but was then directed to approach [] Thomas. Officer Barker asked [] Thomas to step outside of the restaurant and explained that "she was said to have been with the male with the gun." [] Thomas gripped her purse and

- 2 -

Officer Barker told her she needed to take it from [Thomas]. The Officer took her purse an escorted [] Thomas outside. The bag was then placed in the back seat of the patrol car. Officer Barker frisked [] Thomas's person and recovered nothing. She then explained to [] Thomas that they would need to search her purse. Officer Barker went through the purse and recovered a firearm.

Trial Court Opinion, 10/4/2016, at 1-2 (record citations omitted).

Thomas was subsequently arrested and charged with firearms not to be carried without a license, and carrying firearms on a public street in Philadelphia.[2] On March 10, 2015, Thomas filed a motion to suppress the firearm. The trial court conducted a suppression hearing on March 16, 2016, at the conclusion of which it entered an order granting Thomas's motion to suppress. This timely Commonwealth appeal follows.[3]

The Commonwealth's sole issue on appeal challenges the trial court's suppression of the firearm recovered from Thomas's purse. Specifically, the Commonwealth contends Officer Barker had reasonable suspicion that Thomas might be armed in order to justify an investigatory detention, and conduct a "momentary inspection" of Thomas's purse. Commonwealth's Brief at 12. The Commonwealth emphasizes that the officer spoke directly to an "off-duty colleague who had personally observed Andre Bivens [Thomas's companion] bearing a semi-automatic weapon on 52nd Street just

---

[2] **See** 18 Pa.C.S. §§ 6106 and 6108, respectively.

[3] The Commonwealth filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) the same day as its notice of appeal.

before she arrived on the scene." *Id.* at 10-11. When a frisk of Bivens revealed no weapon, the Commonwealth insists "[a]n obvious inference was that Bivens had passed it to [Thomas], who was with him immediately before and after the armed confrontation with the off-duty officer, and who had a bag in which the weapon could be conveniently deposited." *Id.* at 11. The Commonwealth further maintains the "likelihood that the gun was in the bag appeared greater still" when a patdown of Thomas revealed no weapon. *Id.* It argues: "The key points were that Bivens had been seen with the gun, that there was probable cause to arrest him, and that, as the weapon was not on his or [Thomas's] person, it was likely in [Thomas's] handbag." *Id.* at 14. Additionally, the Commonwealth contends the case law the trial court relied upon is distinguishable. *See id.* at 15-16.

Our review of the Commonwealth's appeal from a pretrial order suppressing evidence is well-established:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Vetter*, 149 A.3d 71, 75 (Pa. Super. 2016) (quotation omitted).

It is well-settled that "[t]he Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures[,]" so that, generally, the police must secure a warrant supported by probable cause before conducting a search. *Commonwealth v. Shiflet*, 670 A.2d 128, 129 (Pa. 1995) (footnote omitted). However,

> [i]n *Terry v. Ohio*, [392 U.S. 1 (1968)], the United States Supreme Court created an exception to the Fourth Amendment requirement that police have probable cause before conducting a search of a citizen. The *Terry* exception permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot."
>
> In order for a stop and frisk to be reasonable, the police conduct must meet two separate and distinct standards. Specifically, the police officer must have a "reasonable, articulable suspicion" that criminal activity may be afoot and that the suspect may be armed and dangerous.

*In re N.L.*, 739 A.2d 564, 566–567 (Pa. Super. 1999) (internal citations omitted), *appeal denied*, 753 A.2d 819 (Pa. 2000). Moreover,

> Pennsylvania has also embraced a rule which permits a police officer, during an arrest, to (1) briefly detain and direct the movement of an "arrestee's companion" regardless of whether a reasonable suspicion exists that the companion is involved in criminal activity; and (2) conduct a pat-down search of the companion **if the officer has a reasonable and articulable suspicion that the arrestee's companion is armed and dangerous**.

*Commonwealth v. Mathis*, 125 A.3d 780, 789 (Pa. Super. 2015) (citation omitted and emphasis supplied), *appeal granted*, 134 A.3d 51 (Pa. 2016).

- 5 -

Upon our review of the record, the parties' briefs, and the relevant case law, we conclude the trial court thoroughly addressed and properly disposed of the Commonwealth's issue on appeal. *See* Trial Court Opinion, 10/4/2016, 4-11 at (finding (1) an officer is permitted to frisk the companion of an arrestee when the officer has "independent reasonable belief that the companion was armed and dangerous as determined by the totality of the circumstances[;]"[4] (2) here, officers had no reason to believe Thomas was armed and dangerous, or engaged in criminal activity; (3) officers did not observe Thomas exhibit "any suspicious behavior or furtive movements[;]"[5] (4) Thomas's "mere proximity to an individual suspected of carrying an unlicensed firearm was insufficient to justify a protective search[;]"[6] (5) the search was not incident to arrest as neither Thomas nor Bivens was under arrest at the time; and (6) even if the officers were justified in conducting a *Terry* frisk of Thomas, "the subsequent search of her bag went far beyond what is permissible during a *Terry* search.").[7] Accordingly, we rest on the court's well-reasoned basis.

_____

[4] *Id.* at 4.

[5] *Id.* at 7.

[6] *Id.*

[7] Trial Court Opinion, 10/4/2016, at 9. We emphasize Officer Barker offered no testimony justifying the search of Thomas's purse. *See* N.T., 3/16/2016, at 22-27. Indeed, the officer testified that when she told Thomas they needed to step outside of the restaurant, Thomas simply "went to grab for

*(Footnote Continued Next Page)*

- 6 -

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/11/2017

---

*(Footnote Continued)*

her purse." ***Id.*** at 24. However, Officer Barker "grabbed it due to the fact that it was a person with a gun" and placed it on the backseat of her patrol car. ***Id.*** at 24, 26. After the pat-down of Thomas revealed no weapon, the officer told her, "We have to check your pocketbook." ***Id.*** at 24. Officer Barker did not state Thomas made any furtive movements or attempted to secrete the purse. ***Compare Mathis***, ***supra***, 125 A.3d at 791 (parole agent's search of defendant's jacket was proper; defendant was at parolee's home during routine check, appeared nervous, and picked up his jacket gently and held it "against his side like a football" as he moved into another room, when agent noticed a bulge in the jacket).

Circulated 06/19/2017 10:51 AM

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION- CRIMINAL SECTION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0012195-2014

v. **FILED** 1192 EDA 2016

Markida Thomas OCT 0 4 2016

Criminal Appeals Unit
First Judicial District of PA

CP-51-CR-0012195-2014 Comm. v. Thomas, Markida
Opinion

OPINION

7508156451

Perez, J.

## PROCEDURAL HISTORY

On March 16, 2016, the Court granted the Defendant's Motion to Suppress Physical Evidence of a gun obtained through a search of the Defendant's purse. On April 14, 2016, the Commonwealth filed a timely notice of appeal claiming that the lower court erred in granting the motion and holding that the officers were not permitted to look inside and seize the Defendant's purse.

## FACTUAL HISTORY

On October 10, 2014, Police Officer Rainford Thomas #3268 was in his unmarked personal vehicle on the 1200 block of North 52nd Street in Philadelphia. Officer Thomas was off-duty at the time, stopping to pick up food from a neighborhood eatery. N.T. 3/16/16 p. 7. While parking, Officer Thomas got into a verbal dispute with another individual attempting to park his car. Id. at 7-8. The unknown driver exited his vehicle and began to yell in Officer Thomas's direction while gesturing with his hands. During this encounter, Officer Thomas observed a black semiautomatic weapon in the man's waistband. Id. at 15. The unknown male did not, however, indicate toward the weapon in any way. He did not make any verbal threats and no physical altercation ensued. After the brief interaction, the man got back into his vehicle, drove

1

northbound, and made a U-turn. Id. at 16. At that point, Officer Thomas went into the store and called the police. Subsequent to calling the police, Officer Thomas observed that male exit the vehicle along with another female, later identified as the Defendant, Markida Thomas. It wasn't until that moment that Officer Thomas realized there was another individual in the car with the male. The car had tinted windows, which obscured Officer Thomas's ability to see inside the vehicle. He had not provided a description of Ms. Thomas to the back-up officers. Id. at 17, 20. Upon exiting the car, Officer Thomas observed the two individuals walk into Tasties Restaurant. Officers arrived less than 5 minutes later. Id. at 17-18.

Officer Michelle Barker #2872 testified that she received a flash description for a black male in a gold Crown Vic who was armed with a silver and black handgun. At the direction of Officer Thomas, Officer Barker entered Tasties Restaurant and searched the male. Id. at 22-23. Officer Thomas then explained that there was a female with the male suspect, and described her as having braided hair or possibly dreadlocks. Officer Barker initially approached the wrong female but was then directed to approach Ms. Markida Thomas. Id. at 23. Officer Barker asked Ms. Thomas to step outside of the restaurant and explained that "she was said to have been with the male with the gun." Id. at 24. Ms. Thomas gripped her purse and Officer Barker told her she needed to take it from the Defendant. The Officer took her purse and escorted Ms. Thomas outside. Id. The bag was then placed in the back seat of the patrol car. Id. at 26. Officer Barker frisked Ms. Thomas's person and recovered nothing. She then explained to Ms. Thomas that they would need to search her purse. Officer Barker went through the purse and recovered a firearm. Id. at 24-25.

2

## LEGAL DISCUSSION

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from "unreasonable searches and seizures, including those entailing only a brief detention." *Commonwealth v. Strickler,* 563 Pa. 47, 757 A.2d 884, 888 (2000); *Commonwealth v. Morris,* 422 Pa.Super. 343, 619 A.2d 709, 711 (1992). To secure the right of citizens to be free from such intrusions, courts in Pennsylvania require police officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty. *Commonwealth v. Reppert,* 814 A.2d 1196, 1201 (Pa. Super. 2002); *Commonwealth v. Beasley,* 761 A.2d 621, 624 (Pa.Super.2000).

Under *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer is permitted to briefly detain a citizen for investigatory purposes if the officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot. *Id.; Commonwealth v. Simmons,* 17 A.3d 399, 402-403 (Pa. Super. 2011). In *Commonwealth v. Hicks,* the requirements for a valid stop and frisk were set forth as follows:

> [E]ven if probable cause to arrest is absent, the police officer may still legitimately seize a person, ... and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, if the police officer observes unusual and suspicious conduct on the part of the individual seized which leads him reasonably to conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous.

*Id.* at 158–59, 253 A.2d at 279 (footnote omitted).

3

## I.     The Commonwealth Failed to Establish that the Police had Independent Reasonable Grounds to Frisk Markida Thomas

The Supreme Court has not yet addressed the constitutionality of the automatic companion rule, but the Superior Court has held that a per se "automatic companion rule"[1] runs afoul of the United States and Pennsylvania constitutions. *Commonwealth v. Graham*, 454 Pa.Super. 169, 685 A.2d 132 (1996), *rev'd on other grounds,* 554 Pa. 472, 721 A.2d 1075 (1998). *In re N.L.,* 739 A.2d 564, 567 (Pa. Super. 1999); *Commonwealth v. Jackson*, 907 A.2d 540 (Pa. Super. 2006). The stop and frisk of an arrestee's companion can only be justified under certain circumstances. *In re N.L.,* 739 A.2d 564, 568 (Pa. Super. 1999). The sole question for when an officer can frisk a companion is whether that officer had an ***independent reasonable belief*** that the companion was armed and dangerous as determined by the totality of the circumstances. *Id.* at 568. *(emphasis added). In re N.L.* established some factors for a court to consider when determining if a frisk of an arrestee's companion is justified:

> Reasonable suspicion that a suspect is armed or dangerous may arise under a number of different circumstances. Close spatial and temporal proximity to the scene of a crime can heighten a police officer's reasonable suspicion. *Commonwealth v. Jackson*, 359 Pa. Super. 433, 519 A.2d 427, 431 (1986). A police officer may reasonably believe himself or herself to be in danger when the crime reported to have been committed is a violent crime, when a perpetrator is reported to possess or have used a weapon, or when the hour is late or the location is desolate. *Jackson*, 519 A.2d at 431 (citations omitted). A frisk might also be implemented to protect innocent bystanders within the vicinity. *Id.*

In re N.L., 739 A.2d 564, 568 (Pa. Super. 1999).

In *In re N.L.*, 739 A.2d 564 (Pa. Super. 1999), police responded to a radio call of an armed robbery. *Id.* at 565. The complainant told officers that while at a gas station, two individuals approached her and one of them told her to "give it up" while motioning toward his

---

[1] A per se automatic companion rule would provide that all companions of the arrestee within the immediate vicinity capable of harming the police officer are subject to a constitutional cursory frisk.

4

mid-area, leading her to believe he had a gun. *Id.* at 565. The police arrived within five minutes of the call and accompanied the complainant a few blocks away where they encountered four individuals seated on a stoop. The complainant identified one of the men as the robber. *Id.* at 565. The police frisked all the men and recovered a handgun from the appellant, who had been seated next to the perpetrator.

Appellant's motion to suppress was denied and he was found guilty of possession of a firearm by a minor. *Id.* at 566. The Superior Court upheld the trial court's decision, finding that "the totality of factors supports the conclusion that the officer's suspicions were not unreasonable or unfounded." *Id.* at 569. In fashioning it's holding, the Court highlighted the relevant factors present:

> A crime had been committed, and two male individuals were present during the commission of this crime. The victim believed the perpetrator of the robbery had a gun. It was after midnight. The area in which both the crime and the subsequent arrest of the Appellant's companion occurred was a high drug-traffic area. When Officer Kirkland and the victim approached the individual that she identified as the perpetrator, approximately five minutes after the crime had been committed, the perpetrator was seated with three other males. Any one of these three individuals could have been the second person present when the robbery was committed. Further, if the perpetrator in fact had a firearm as the victim believed, he could have easily handed it to any one of the three individuals seated with him.

In re N.L., 739 A.2d 564, 569 (Pa. Super. 1999).

In *Commonwealth v. Hook*, 459 A.2d 379 (Pa. Super. 1983), the Court held that a *Terry* stop of a companion would have been permissible where a gun was recovered from the principle arrestee. However, there are facts in this case that this Court wishes to distinguish from the present matter. In *Hook*, police responded promptly to a report that two men were inside a 7-Eleven store and one of them had a gun. The police arrived and immediately saw both men, observing that one of the suspects had a firearm in his waistband. The two men were searched and officers recovered drugs from defendant concealed in a sock. *Id.* at 380. The Court

5

ultimately found that the arrest of the defendant was improper but that a frisk would have been permissible. *Id.*

An individual's location, standing alone, does not provide an officer with a particularized, objective basis for a perceived threat to his safety. *Commonwealth v. Grahame*, 607 Pa. 389, 399, 7 A.3d 810, 816 (2010). *Grahame* specifically held that Courts cannot abandon the totality-of-the-circumstances analysis for reasonable suspicion supporting a protective search and rely solely upon the preconceived notion that certain types of criminals tend to carry weapons. *Id.* at 400.

In *Commonwealth v. Grahame*, 607 Pa. 389 (Pa. 2010), officers obtained consent to search a house suspected of drug sales. The police entered and found Grahame sitting on a couch with a purse at her feet. After verifying that the purse belonged to her, the police seized and searched it, finding drugs *Id.* at 392. The Supreme Court found that the arresting officer conducted the protective search of Grahame's bag unlawfully because it was based on a generalization that guns are commonly found near illegal drugs. *Id.* at 401. The officer lacked reasonable suspicion to search the handbag for safety reasons because the search was based solely on the fact that defendant was in a residence where *another individual* had sold drugs ten minutes prior. The officer did not check to see if Grahame had a record, was involved in the sale of drugs, exhibited any unusual behavior when police entered, or observed any suspicious bulge in Grahame's purse. *Id.* Without the Commonwealth eliciting any facts that supported an objective reasonable belief that Grahame was armed and dangerous, the search was in violation of *Terry* and the gun found should have been suppressed. *Id.* at 402.

The police in the present case had neither probable cause nor reasonable suspicion to believe that the Appellant, Markida Thomas, was engaged in any criminal conduct or that she

6

was armed and dangerous. Officer Thomas did not observe any suspicious activity or criminal behavior beyond his singular observation that the male suspect was in possession of a firearm. Accordingly, the frisk and subsequent search of Defendant's purse were unlawful. The police had no individualized, articulable reasons to believe that Ms. Thomas was armed and dangerous. Appellant's conduct did not convey any threat of danger to the officer. Neither Officer Thomas nor Officer Barker observed any suspicious behavior or furtive movements on Appellant's part nor did he detect a suspicious bulge in Appellant's purse.

*In re NL* provides this court with some direction on what factors to consider in the totality-of-circumstance test as applied in companion cases. Here, the circumstances surrounding the incident involved far fewer factors that would justifiably "heighten" the officer's suspicion. The initial critical distinction between the present case and *In re N.L.* is that there, the crime at issue was an armed robbery involving two perpetrators. The police in *NL* were faced with a complainant who, moments earlier, was the victim of a violent offense. The notion that a crime had occurred was immediately apparent from the complainant's statements. Officers had a reasonable belief that the robber identified by the complainant was still in the company of his co-conspirator. Officers could have reasonably suspected that there was an ongoing robbery spree. The nature of the suspected criminal activity differs greatly from *In re NL*.

In the instant case, it was the mere possession of a firearm that was suspected. The fact that Ms. Thomas was in the company of an individual suspected of possessing a gun does not provide a constitutional justification to frisk her person or search her handbag. Ms. Thomas' mere proximity to an individual suspected only of carrying an unlicensed firearm was insufficient to justify a protective search. There was no indication that she and her male companion were involved in any common enterprise. They were not suspected of using the gun

7

in conjunction with any illicit activity. Moreover, it was not immediately apparent to Officer Thomas that any crime had even occurred. Citizens of Philadelphia are permitted to carry a concealed firearm provided they have a valid license to carry and are not otherwise barred.

The fact that the robbery and subsequent frisk of the appellant in *In re N.L.* occurred after midnight in a high-crime area were important factors for the court's consideration of the legality of the police conduct. The Commonwealth in the present case never elicited any testimony from the officer about the crime rate in the area of 52nd and Girard where the incident occurred. Neither officer offered any characterization of the neighborhood for this court's consideration. The encounter between Ms. Thomas and the officers here occurred during the earlier part of the night (between 9:00 – 10:30pm) in an area where Officer Thomas was off-duty, patronizing a local restaurant.

Another important distinction between the so-called automatic companion cases and the instant case is that the doctrine applies to the companion of an *arrestee*. Here, there was no arrest made of the male suspected of possessing an unlicensed firearm. The police turned their suspicion to Appellant only after frisking the original suspect with negative results.

The search of Ms. Thomas' handbag exceeded the scope of a constitutional *Terry* frisk. *Terry* allows for a limited pat down of the outer clothing of a detained individual to determine if he or she is armed and dangerous. *Commonwealth v. Reppert*, 814 A.2d 1196, 1212 (Pa. Super. 2002). *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Commonwealth v. E.M.*, 558 Pa. 16, 735 A.2d 654, 659, 661 (1999); *Commonwealth v. Marconi*, 408 Pa.Super. 601, 597 A.2d 616, 619–620 (1991); *see also Commonwealth v. Zharir* (establishing a very fact-intensive test for the plain-feel doctrine).

Even if the Superior Court were to find in the present case that a frisk of Ms. Thomas was permitted, the subsequent search of her bag went far beyond what is permissible during a *Terry* search. Even if the cursory patdown were justified, the subsequent search of Appellant's handbag was still unjustified because nothing occurred during the course of the investigative detention to justify a further level of intrusion into Ms. Thomas's effects. The officers were only permitted to frisk the outer garments of Ms. Thomas's person. Moreover, the bag had been secured out of reach of the Defendant's grasp. There was no risk of destruction of evidence or threat to officer safety once the purse was taken from the Defendant and placed in the police car.

The plain feel doctrine shows the limitations that *Terry* puts on a police officer during a frisk. The police officers in this instant case exceeded even the scope of the plain feel exception to *Terry*. The police officers, without even frisking the bag of Ms. Thomas, opened the bag which constitutes a search that is not protected under *Terry*.

## IV. The Search of Markida Thomas' Handbag was not Justified Because she was not Subject to an Arrest Prior to the Search

The police in the present case did not have probable cause to arrest Ms. Thomas or search her handbag. There was no exigency justifying a further intrusion into her purse. There is no valid exception to the warrant requirement where an officer conducts a search incident to an arrest of a defendant's purse where the defendant was not arrested and there was neither probable cause nor an articulable suspicion that she was involved in criminal activity. *Commonwealth v. Shiflet*, 670 A.2d 128 (Pa. 1995).

Exigent circumstances do not render a warrantless search reasonable absent probable cause. *Commonwealth v. Haynes*, 2015 PA Super 94, 116 A.3d 640, 646 (Pa. Super. Ct. 2015), *appeal denied*, 125 A.3d 1199 (Pa. 2015). When police have probable cause to believe

9

contraband is present and reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search may be justified. *Commonwealth v. Tate*, 237 Pa.Super. 104, 109, 346 A.2d 570, 573 (1975).

In *Shiflet*, a car was pulled over for suspicion of DUI. After the driver was arrested, one of the passengers, Shiftlet, was found incapable of driving herself home safely. *Id.* at 166. An officer offered to drive her home, but first seized Shiftlet's purse, finding a small amount of marijuana and paraphernalia. *Id.* During the motion to suppress, the trooper testified that the search was a customary practice for officer safety. *Id.* The trial judge denied the suppression motion from Shiftlet. *Id.* at 167. On appeal, the Superior Court reversed the trial court's decision, holding that:

> a passenger turned bystander, must [not] sacrifice her Fourth Amendment rights simply because her companions have been arrested. Third party bystanders do not give up their right to require reasonable searches and seizures merely due to their presence at the scene of an arrest. *(citations omitted).*

*Id.* at 167. The Supreme Court of Pennsylvania upheld this decision stating that "[t]he search of Appellee is simply too attenuated from the arrest of the driver and the other passenger to properly be considered to be "incident" to the arrest of the driver and the other passenger." *Id.* at 170.

In the present case, neither Ms. Thomas nor the male suspect were the subject of any formal arrest. The officers lacked probable cause to believe that any criminal activity was afoot. At best, they had reasonable suspicion to believe that Ms. Thomas' companion was unlawfully carrying a firearm. Ms. Thomas was not part of a routine administrative procedure at a police station and thus could not be classified as an inventory search. After the officer frisked her

person, they secured Ms. Thomas' handbag away from her reach, thereby extinguishing any possible exigency.

The Commonwealth did not present any evidence that that would indicate that Ms. Thomas was subject to a custodial arrest. Even if the male suspect had been arrested, the time from when he was observed possessing the firearm and when the officers approached Ms. Thomas was far too attenuated.


## CONCLUSION

For the foregoing reasons, the underlying judgment granting the Defendant's motion to suppress should be affirmed.


BY THE COURT:

_____
Judge Mia Roberts Perez

Dated: September 14, 2016

11