J-S20041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WARREN HAND, | : | No. 2579 EDA 2016 |
| | : | |
| Appellee | : | |

Appeal from the Order July 13, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012187-2015

BEFORE: BOWES, J., OTT, J. and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED JULY 25, 2017**

The Commonwealth appeals from the order entered July 13, 2016, in the Philadelphia County Court of Common Pleas, granting Appellee Warren Hand's pretrial motion to suppress evidence recovered during an illegal search.[1] On appeal, the Commonwealth contends the trial court erred when it found the officer's actions in moving aside a drape to look inside a residence was improper because the officer had a reasonable belief a person may be in imminent danger. For the reasons set forth below, we remand for additional findings of fact, and a supplemental opinion.

---

[1] Pursuant to Pennsylvania Rule of Appellate Procedure 311(d), the Commonwealth properly certified in its notice of appeal that the order "terminates or substantially handicaps the prosecution." Notice of Appeal, 8/4/2016. *See* Pa.R.A.P. 311(d).

The facts underlying this appeal are summarized by the trial court as follows:

On June 19, 2015, at about 12:10 a.m., Philadelphia Police Officer James Crown and his partner, Officer [Donald] Vandemay, were on patrol in the Kensington section of Philadelphia for the purpose of preventing gun violence. The officers responded to a radio call directing them to go to 3462 Frankford Avenue to investigate a report of a disturbance involving a person with a gun.

Upon arrival, the front door to the property was open but was immediately shut. Officer Crown heard males yelling inside the property and observed drapes blowing out of a broken window. Officer Crown attempted to open the front door but it was locked. Thereafter, he walked up to the broken window, reached inside the property and moved the drapes which allowed him to observe [Hand] and a Nasir Lewis standing by a bedroom door. [Hand] was observed with a semi-automatic gun in his hand. Officer Crown announced his presence at which time [Hand] looked in the officer's direction, retreated into the bedroom and slammed shut the bedroom door. The other male was directed to exit the property at which time he was taken into custody.

Officer Crown then went inside the property and opened the bedroom door. [Hand] was removed from the bedroom and taken into custody by officers assisting Officers Crown and Vandemay. Officer Crown then went back inside the bedroom and performed a search of the closet [where] he recovered a loaded .380 caliber Bersa semiautomatic firearm. Police seized the weapon, took it outside and observed a bullet lying on the steps to the residence matching the bullets inside the seized firearm.

While at the property, [the o]fficer came in contact with a woman named Geisel Duarte sitting on the steps leading into the property. She stated that Lewis had "trashed" her house.

When Lewis was asked where he lived, he gave the address to the property. [Hand] gave an address in Southwest Philadelphia. Officer Crown did not know what the argument was about, and did not know if anyone was hurt inside the residence.

[Hand] testified that he was staying at the first floor residence with Lewis for several months before June 19, 2015. He stated that he developed a relationship with Ms. Duarte, who lived on the second floor of the residence. [Hand] testified that sometimes he would stay in her apartment with her.

Trial Court Opinion, 10/6/2016, at 2-3 (record citations omitted).

Hand was subsequently charged with one count of persons not to possess firearms. *See* 18 Pa.C.S. § 6105(a)(1). He filed an omnibus pretrial motion on December 8, 2015, seeking suppression of evidence recovered and statements made following an illegal search and seizure.[2] The trial court conducted a hearing on May 26, 2015. Thereafter, on July 13, 2016, the court granted Hand's motion to suppress the firearm recovered from the residence. This timely Commonwealth appeal follows.[3]

The Commonwealth's sole issue on appeal challenges the trial court's ruling suppressing the firearm recovered on the night in question. Specifically, the Commonwealth contends Officer Crown acted properly and employed the "least intrusive means available," when he "momentarily brush[ed] aside a curtain flapping in the wind" through a smashed window to ensure "no one inside was in imminent danger." Commonwealth's Brief at 12. The Commonwealth emphasizes the officer was "investigating a

_____

[2] The Commonwealth never claimed Hand made any statements on the night of his arrest. During the suppression hearing, Hand's counsel acknowledged he included the request to suppress any statements as a precaution. *See* N.T., 5/26/2016, at 9-10.

[3] The Commonwealth filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) the same day as its notice of appeal.

potential armed home invasion after midnight, accompanied by screaming, a slamming door, and a shattered window[.]" *Id.* at 13-14. Accordingly, it maintains the officer's actions were a proper response to his reasonable belief "that persons may be in immediate physical danger," and the court's suppression of the subsequently recovered firearm was in error. *Id.* at 14.

Our review of a Commonwealth's appeal from a pretrial order suppressing evidence is well-established:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Vetter*, 149 A.3d 71, 75 (Pa. Super. 2016) (quotation omitted).

Every person has a constitutional right to be free from unreasonable searches and seizures in his home. *Commonwealth v. Caple*, 121 A.3d 511, 517 (Pa. Super. 2015), *citing* U.S. CONST. amend. IV and Pa. Const. art. 1, § 8. Accordingly, as a general rule, the police must obtain a warrant before conducting a search of a person's residence. *Id.* However, one well-recognized exception to the warrant requirement is the presence of exigent circumstances, accompanied by probable cause.

> "[A]bsent probable cause and exigent circumstances, the entry of a home without a warrant is prohibited under the Fourth

- 4 -

Amendment." ***Commonwealth v. Roland***, 535 Pa. 595, 637 A.2d 269, 270 (1994). In determining whether exigent circumstances exist, the following factors are to be considered:

(1) the gravity of the offense, (2) whether the suspect is reasonably believed to be armed, (3) whether there is above and beyond a clear showing of probable cause, (4) whether there is strong reason to believe that the suspect is within the premises being entered, (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended, (6) whether the entry was peaceable, and (7) the time of the entry, i.e., whether it was made at night. These factors are to be balanced against one another in determining whether the warrantless intrusion was justified.

***Id.*** at 270–71 (quoting ***Commonwealth v. Wagner***, 486 Pa. 548, 406 A.2d 1026, 1031 (1979)). **We may also consider "whether there is hot pursuit of a fleeing felon, a likelihood that evidence will be destroyed if police take the time to obtain a warrant, or a danger to police or other persons inside or outside the dwelling."** ***Id.*** at 271. When considering these factors, we must remain cognizant that "police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." ***Id.*** (quoting ***Welsh*** [***v. Wisconsin***], 466 U.S. [740,] 749–50, 104 S.Ct. 2091 [(1984)]).

***Commonwealth v. Waddell***, 61 A.3d 198, 211 (Pa. Super. 2012) (emphasis added).

This Court has further explained that an exigent circumstances determination requires the trial court to examine "all of the surrounding circumstances in a particular case." ***Caple***, ***supra***, 121 A.3d at 518 (quotation omitted). "One of these circumstances is when the police **reasonably believe** that someone within the residence is in need of immediate aid." ***Id.*** (emphasis added), *quoting* ***Commonwealth v. Potts***, 73 A.3d 1275, 1280 (Pa. Super. 2013), *appeal denied*, 83 A.3d 415 (Pa.

2013). Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." **Potts**, **supra**, 73 A.3d at 1280-1281, *quoting* **Ryburn v. Huff**, 132 S.Ct. 987, 992 (U.S. 2012).

Here, the trial court first determined that Officer Crown's "actions of reaching into a private residence to remove an obstacle constituted a search," noting "the occupants of the residence hung drapes to keep out prying eyes." Trial Court Opinion, 10/6/2016, at 6. Consequently, the court concluded Officer Crown's intrusion necessitated either a warrant or exigent circumstances. Since there was no warrant, the trial court proceeded to consider whether exigent circumstances existed to justify the officer's search. **See id.**

In concluding exigent circumstances were not present, the court found that while the radio call indicated a gun was involved, it did not provide any specifics regarding the perpetrator or the disturbance. **See id.** at 7. The trial court further explained:

> Instantly, the officer acted upon mere suspicion. He candidly admitted that he did not know what the people he heard yelling were arguing about and did not know if anyone might be injured. Based on the foregoing, it was clear to this Court that the officer acted on mere suspicion.
>
> Next, police had no idea that an actual crime occurred or that the suspect was inside the residence. The lack of information in the radio call coupled with the officer's observations hardly gives rise to probable cause. In point of

> fact, when the police intrusion was made, the officer had yet to identify a crime or a suspect.
>
> The entry here was peaceful and the entry occurred at night. Finally, there was no hot pursuit, the officers did not know whether evidence would be destroyed and they had no idea if they or others were in danger.
>
> In view of the foregoing, it was clear to this Court that the actions of the police herein were illegal and that the gun had to be suppressed because its seizure stemmed from the illegal brushing aside of the curtain.

*Id.* at 8. Accordingly, the trial court ruled Officer Crown's search of the residence was unlawful, and granted Hand's motion to suppress the evidence recovered as result of the search.

The Commonwealth, however, asserts the trial court fixated on the enumerated factors listed above when "such a test is of limited utility where there is an objectively reasonable basis for believing that persons may be in immediate physical danger." Commonwealth's Brief at 14. Rather, it contends the trial court should have focused on the fact that Officer Crown faced a potential "ongoing threat to innocent persons." *Id.* Accordingly, the Commonwealth maintains the decisions in *Commonwealth v. Davido*, 106 A.3d 611 (Pa. 2014), and *Potts*, *supra*, are controlling.

In *Davido*, the Supreme Court considered, on post-conviction collateral review, whether trial counsel was ineffective for failing to seek suppression of evidence recovered during a warrantless search of the petitioner's home. In that case, the police responded to an anonymous 911 call "to investigate a 'domestic situation' that involved a 'man ... hitting a woman[,]' and were informed en route that loud screaming had been heard

from inside the residence." ***Davido***, ***supra***, 106 A.3d at 616. When they arrived minutes later, shortly before 8:00 a.m., the residence was quiet, and no one answered the door. Accordingly, "[r]esponding to a 'gut feeling' that someone inside might be injured or otherwise in need of assistance, one officer entered the residence through an unsecured window, unlocked a deadbolt on the front door, and admitted the other officer." ***Id.*** at 616-617. The officers announced themselves as they proceeded to search the residence for any injured persons. ***See id.*** at 617. They eventually encountered the petitioner attempting to flee through a third story window. ***See id.***

In considering whether counsel was ineffective for failing to file a motion to suppress, the Court emphasized that "the potential for imminent physical harm in the domestic context implicates exigencies that may justify a limited police intrusion into a dwelling." ***Id.*** at 623. While it refused to hold that "domestic abuse cases create a *per se* exigent need for warrantless entry[,]" the Court stated:

> We do recognize, however, that the police have a duty to respond seriously to reported domestic conflict situations, and in doing so, they must be accorded some latitude in making on-the-spot judgments as to what actions to take and what actions are reasonably necessary to protect themselves and potential victims of abuse.
>
> … Here, the 911 call reporting domestic violence contained the fairly specific details that a man was beating a woman within a specifically identified residence, and a separate report indicated that screaming could be heard emanating from within that residence. Yet, when the officers arrived at the scene shortly before 8:00 a.m. on that Sunday morning, approximately three

minutes after the 911 call had been received, no one answered the door, and no sound could be heard except the unanswered ringing of a telephone within the residence.

*Id.* at 623–624. Furthermore, the ***Davido*** Court noted the officer's initial search was limited to a search for persons in need of assistance; a subsequent search for evidence was conducted only after a warrant was secured. ***See id.*** at 625. Upon these facts, the Supreme Court concluded "the officers' entry into the home was justified under the recognized 'persons in immediate need of assistance' exigency exception to the warrant requirement[.]" ***Id.***

In ***Potts***, a panel of this Court similarly concluded "the totality of the circumstances justified the police officers' reasonable belief that they needed to enter [the defendant's] apartment to ensure that [the victim] was not in danger or in need of immediate aid." ***Potts***, ***supra***, 73 A.3d at 1281. There, the officers responded to "a 911 call for an alleged domestic dispute involving someone screaming at [the defendant's] apartment building." ***Id.*** When they arrived, the officers heard screams coming from the defendant's apartment. However, when they knocked and announced their presence, the screaming stopped, and the victim eventually opened the door, looking disheveled and distraught, as if she had been crying, breathing "really heavy" and "sweating although it was a cold day in January." ***Id.*** (internal citations omitted). The officer then saw the defendant run into a bedroom and close the door. Because they were concerned for the victim's safety,

the officers entered the apartment without a warrant. **See id.** As noted *supra*, on appeal, the panel found the officer's actions were proper.

Although we recognize the facts in the present case are not as compelling as those in **Potts**, and the 911 call was not as specific as that in **Davido**, nonetheless we conclude the trial court erred when it found Officer Crown's minimally intrusive act of brushing aside a curtain, to confirm no one was in need of immediate aid, was improper. Here, Officer Crown was dispatched at midnight to a specific residence based on a report of a "disturbance, man with a gun." N.T., 5/26/2016, at 13. When he and his partner arrived, someone "slammed" the front door shut. **Id.** at 14. Officer Crown testified that when he approached the residence he could hear "males yelling from the first-floor area." **Id.** Although he could not determine how many people were in the residence, he specifically stated he "heard **multiple** male voices yelling." **Id.** at 19 (emphasis added). Moreover, Officer Crown further observed:

> There's only one window. The main window for the first floor was smashed. The window was obviously broken. I can see it's broken. It had drapes blowing out.

**Id.** at 14. At that point, reasonably believing someone inside the residence may be in need of immediate aid, Officer Crown "pull[ed] the drapes aside" and observed Hand holding a semiautomatic weapon. **Id.** Therefore, we agree with the Commonwealth's contention that the officer's actions were proper.

We find the facts in **Davido** support our conclusion. Although the 911 call in that case provided specific details of a domestic dispute, when the officers arrived on scene, the residence was quiet and no one answered the door. **See Davido**, **supra**, 106 A.3d 616-617. The **Davido** Court, however, found the "non-responsiveness … could reasonably have been an indication that the 911 call was legitimate," and determined, based on the "reasonably specific" 911 call and the "inherent exigencies" in domestic abuse cases, "the officers' entry into the residence without a warrant to search for an injured or otherwise non-responsive domestic abuse victim was objectively reasonable under the totality of circumstances." **Id.** at 624. Here, while the 911 report was less specific (although it did indicate a person with a gun was involved), the other circumstances presented to Officer Crown – the late hour, a door slammed shut as soon as the officers arrived, multiple voices yelling inside the residence, and a smashed front window – provided him with an objectively reasonable belief that someone inside the residence may be in need of immediate aid. **See Potts**, **supra**, 73 A.3d at 1280-1281 ("[T]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving."), *quoting* **Ryburn**, **supra**, 132 S.Ct. at 992. Accordingly, we conclude the trial court erred when it determined the officer's minimally intrusive act of moving aside the drapes violated Hand's constitutional rights.

Nevertheless, Hand argues that, even if Officer Crown's initial entry into the residence was justified, the officer's re-entry to search the bedroom where the firearm was recovered, was improper. *See* Hand's Brief at 17. Hand maintains:

> Once [he and Lewis] were outside, there was no indication that the safety of others was threatened or that evidence might be lost or destroyed, particularly where there was no showing that the police lacked the ability [to secure] the property from outside pending the issuance of a search warrant.

*Id.* at 19-20. Accordingly, he contends there was no justification for Officer Crown to re-enter the apartment, search the bedroom, and seize the handgun recovered from the bedroom closet before securing a warrant.

The Commonwealth asserts, however, the officer's subsequent check of the bedroom constituted a permissible protective sweep for other possible assailants or victims. *See* Commonwealth's Brief at 12.

"A protective sweep is 'a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.'" *Potts*, *supra*, 73 A.3d at 1281, *quoting* *Commonwealth v. Taylor*, 771 A.2d 1261, 1267 (Pa. 2001), *cert. denied,* 534 U.S. 994 (2001).

> Pursuant to the first level of a protective sweep, without a showing of even reasonable suspicion, police officers may make cursory visual inspections of spaces immediately adjacent to the arrest scene, which could conceal an assailant. The scope of the second level permits a search for attackers further away from the place of arrest, provided that the officer who conducted the sweep can articulate specific facts to justify a reasonable fear for the safety of himself and others.

*Id.* at 1281–1282.

Here, the trial court did not determine whether Officer Crown's subsequent search of the bedroom constituted a permissible protective sweep because it found the officer's initial "search" through the curtains in the window was improper. "[O]ur standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations." *In re L.J.*, 79 A.3d 1073, 1080 n.6 (Pa. 2013). Therefore, it is for the trial court, in the first instance, to determine whether the officer "acted reasonably when he did a brief safety check" of the bedroom. *Potts*, *supra*, 73 A.3d at 1282.

Accordingly, while we agree with the Commonwealth's contention that Officer Crown's initial action in brushing aside the curtains did not constitute a violation of Hand's constitutional rights, we remand this case to the trial court so that it may make additional findings regarding the officer's subsequent search of the bedroom, and file a supplemental opinion within 30 days of the date of the filing of this Memorandum.

Case remanded for findings of fact and a supplemental opinion. Panel jurisdiction retained.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/2017