J-A15026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRANT N. GIVLER | : | No. 1996 MDA 2017 |

Appeal from the Order Entered December 7, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0005883-2017

BEFORE:  PANELLA, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 30, 2018**

The Commonwealth of Pennsylvania (Commonwealth) appeals from the order granting Appellee Brant N. Givler's suppression motion.  For the reasons that follow, we affirm.

The trial court summarized the facts presented at the suppression hearing as follows:

> [Officer Mark Jackson (Officer Jackson)] testified that close to midnight on June 20, 2017, he observed a Chevrolet pickup truck parked in the middle of a private parking lot adjacent to Long Level Road, north of the Dock 2 Boat Ramp in York County, Pennsylvania.  Officer Jackson stated that he had driven past that location while on patrol an hour and a half earlier and had not observed the vehicle.  Officer Jackson approached the vehicle and observed [Appellee] asleep in the driver seat, with the window rolled down, and the radio on.  The officer observed the keys of the pickup truck to be in the ignition[,] but the engine was not running.  [Appellee] had a bottle of Yuengling Beer in between his lap.

> After Officer Jackson approached the vehicle, he attempted to wake [Appellee].  Once awake, Officer Jackson observed signs of

impairment. Officer Jackson stated [Appellee] told him he had bought a six-pack of beer from the River Beverage in Wrightsville, Pennsylvania, around 7 p.m. that evening. Officer Jackson testified that [Appellee] told Officer Jackson that he began drinking the six-pack of beer shortly after he purchased it and then took his dog to a park in Wrightsville and then drove to the boat ramps around 10 p.m. that night. Subsequently, upon further investigation by Officer Jackson, [Appellee] was arrested on suspicion of [driving under the influence of alcohol (DUI)]. [Appellee] was then taken to [c]entral [b]ooking where he was read an updated DL-26B form and consented to a blood draw.

Trial Court Opinion, 12/7/17, at 3-5 (record citations omitted).

Appellee was charged with DUI – general impairment and DUI – high rate of alcohol.[1] On November 6, 2017, Appellee filed a pre-trial motion to suppress in which Appellee argued that his arrest for DUI and subsequent blood draw were unconstitutional. On November 22, 2017, the trial court held a hearing on Appellee's suppression motion. On December 7, 2017, the trial court granted Appellee's motion concluding that Officer Jackson did not possess probable cause to arrest Appellee for DUI. *See id.* at 5. The Commonwealth timely appealed to this Court.[2] Both the trial court and the Commonwealth have complied with Rule 1925 of the Pennsylvania Rules of Appellate procedure.

On appeal, the Commonwealth presents the following issue for review:

---

[1] 75 Pa.C.S.A. § 3802(a)(1), (b).

[2] The Commonwealth certified that the trial court's December 7, 2017 order would terminate or substantially handicap the prosecution of this criminal offense pursuant to Rule 311(d) of the Pennsylvania Rules of Appellate Procedure.

Did the suppression court err in suppressing the evidence obtained as a result of Officer [] Jackson's interaction with [Appellee] where the interaction was a mere encounter requiring no level of suspicion, the mere encounter gave rise to reasonable suspicion for Officer Jackson to conduct an investigatory detention, and, as a result of the lawful interaction, Officer Jackson gained probable cause to arrest [Appellee]?

Commonwealth's Brief at 4.

The standard of review for addressing a trial court's order granting a suppression motion is as follows:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Vetter*, 149 A.3d 71, 75 (Pa. Super. 2016), *appeal denied*, 169 A.3d 577 (Pa. 2017) (quotations and citations omitted).

"The Fourth Amendment of the Federal Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures." *Commonwealth v. Walls*, 53 A.3d 889, 892 (Pa. Super. 2012). "To secure the right of citizens to be free from such [unreasonable] intrusions, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Pratt*, 930 A.2d 561, 563 (Pa. Super. 2007). Courts in

this Commonwealth have recognized three types of interactions between the police and a citizen: a mere encounter, an investigative detention, and a custodial detention.

> A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond. An investigatory stop, which subjects a suspect to a stop and a period of detention . . . requires a reasonable suspicion that criminal activity is afoot. A custodial search is an arrest and must be supported by probable cause.

*Commonwealth v. Newsome*, 170 A.3d 1151, 1154 (Pa. Super. 2017).

This Court has explained, that when determining whether an interaction is a mere encounter versus an investigative detention,

> the focus of our inquiry is on whether a seizure of the person has occurred. Within this context, our courts employ the following objective standard to discern whether a person has been seized: [w]hether, under all the circumstances surrounding the incident at issue, a reasonable person would believe he was free to leave. Thus, a seizure does not occur simply because a police officer approaches an individual and asks a few questions.

*Commonwealth v. Cooper*, 994 A.2d 589, 592 (Pa. Super. 2010) (citations, quotation marks, and ellipses omitted). In contrast, "a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest." *Commonwealth v. Mackey*, 177 A.3d 221, 227 (Pa. Super. 2017) (quotations and citations omitted).

The Commonwealth argues that Officer Jackson's interaction with Appellee began as mere encounter and that upon discovering Appellee asleep

in his vehicle with a bottle of beer between his legs, appropriately investigated Appellee for DUI. The Commonwealth asserts that through this investigation, Officer Jackson developed the probable cause necessary to arrest Appellee for DUI.

The Commonwealth's argument, much of which is devoted to its claim that Officer Jackson's interaction with Appellee began as a mere encounter, largely misses the mark. The suppression hearing transcript reflects that the trial court agreed with the Commonwealth that the interaction started as a mere encounter. N.T., 11/22/17, at 33. The trial court had no issue with Officer Jackson checking on Appellee's vehicle when it was parked late at night in a parking lot the officer reasonably believed to be closed to the public at the time of night. *Id.* Thus, whether or not the interaction began as a mere encounter had no bearing on the trial court's decision.

Rather, the trial court concluded that Officer Jackson did not have probable cause to arrest Appellee for DUI. Probable cause exists "where the facts and circumstances within the officers' knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." ***Commonwealth v. Stultz***, 114 A.3d 865, 883 (Pa. Super. 2015) (quotations and citations omitted). "We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." ***Commonwealth v. Hernandez***, 935 A.2d 1275, 1284 (Pa. 2007).

Officer Jackson arrested Appellee for suspicion of DUI under Section 3802(a)(1) of the Motor Vehicle Code. Section 3802(a)(1) prohibits an individual from "driving, operating, or in actual physical control of the movement of a vehicle during the time when he or she was rendered incapable of safely doing so due to the consumption of alcohol. *Commonwealth v. Teems*, 74 A.3d 142, 145 (Pa. Super. 2013) (quotations and citation omitted). The trial court found that there was no evidence that Appellee exercised control over his vehicle while he was intoxicated. Trial Court Opinion, 12/7/17, at 5.

We agree. The record reflects that around 10:30 p.m. on the night in question Officer Jackson drove by the parking lot at issue, which was empty at that time. N.T., 11/22/17, at 7. Officer Jackson stated that when he returned approximately an hour-and-a-half later, he observed Appellee's truck parked in the middle of the lot. *Id.* at 6. When Officer Jackson approached Appellee's vehicle, he noticed that the engine was off, the keys were in the ignition, the radio was on, and Appellee was asleep with a single bottle of beer in his lap. *Id.* at 7-8. Officer Jackson testified that when he woke Appellee and began to question him, Appellee told that he bought a six-pack of beer at around 7:00 p.m. that evening and that he began drinking shortly after he purchased it. *Id.* at 9-10. Appellee then told Officer Jackson that he took his dog to the park and then drove to the boat docks. *Id.* at 10.

These facts, in particular that Appellee was sitting intoxicated in a parked vehicle with the engine off, do not support a conclusion that Officer Jackson reasonably believed Appellee was in actual physical control over his vehicle while intoxicated. As this Court has explained,

> A brief review of the cases which considered the concepts of actual physical control reveals that, *at a very minimum*, a parked car should be started and running before a finding of actual physical control can be made. ***See, e.g.***, ***Commonwealth v. Bobotas***, [] 588 A.2d 518 ([Pa. Super.] 1991) (car running with defendant in parked car); ***Commonwealth v. Kloch***, [] 327 A.2d 375 ([Pa. Super.] 1974) (automobile parked, lights on, engine running, driver asleep behind steering wheel); [***Com., Dep't of Transp.***] ***v. Farner***, [] 494 A.2d 513 ([Pa. Cmwlth.] 1985) (engine running, transmission in park, brake lights on, person behind wheel with hands on steering wheel); ***Commonwealth v. Kallus***, [] 243 A.2d 483 ([Pa. Super.] 1968) (car immobile in snow bank, engine running).

***Commonwealth v. Price***, 610 A.2d 488, 490 (Pa. Super. 1992).

Moreover, the testimony indicating that Appellee admitted that he began drinking earlier in the evening does not establish that he operated his vehicle while intoxicated. Noticeably missing from Officer Jackson's testimony was any evidence as to the amount of alcohol consumed by Appellee throughout the evening.[3] There was also no evidence presented indicating when Appellee last consumed alcohol or whether he consumed alcohol in close proximity to the time he drove to the boat docks. Furthermore, there was no evidence

---

[3] We note that the Commonwealth asserts that Officer Jackson observed an empty six-pack of beer in Appellee's vehicle. Commonwealth's Brief at 18. There is, however, no evidence of record supporting this assertion.

indicating the amount of alcohol he consumed out of the bottle that Officer Jackson observed in Appellee's lap.

As the trial court explained, the facts were "too tenuous to establish" that Officer Jackson reasonably believed Appellee had operated his vehicle while under the influence of alcohol. *See* Trial Court Opinion, 12/7/17, at 5. Accordingly we conclude that the trial court did not err in determining that Officer Jackson lacked probable cause to arrest Appellee for DUI.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/30/2018